OPINION
{¶ 1} Plaintiff-appellant, Mansfield Square, Ltd., appeals from a judgment of the Franklin County Court of Common Pleas granting the summary judgment motion of defendant-appellee, Big Lots, Inc. ("Big Lots"), and dismissing plaintiff's complaint in its entirety. Because plaintiff could not reasonably rely on Big Lots' oral assurances that it would lease commercial premises from plaintiff when Big Lots had clearly manifested its intent not to be bound until the parties executed a written lease agreement, we affirm the *Page 2 
trial court's decision to grant summary judgment to Big Lots on plaintiff's promissory estoppel claim.
 {¶ 2} Plaintiff Mansfield Square, Ltd., is a limited partnership that owns several shopping centers, including the Kingsgate Mall shopping center in the Mansfield area. Skilken Properties is Mansfield Square, Ltd.'s leasing agent (collectively, "plaintiff") and manages not only Kingsgate Mall but several other shopping malls throughout Ohio and other states. Big Lots is an Ohio corporation that owns and operates retail stores in several states, including Ohio.
 {¶ 3} In August 1998, through a ten-year lease agreement with plaintiff, Office Depot leased 30,000 square feet of retail space at Kingsgate Mall. Sometime in 2003, Office Depot advised plaintiff that it intended to vacate its Kingsgate Mall location. In September 2003, Big Lots began substantive discussions with plaintiff about leasing the Office Depot site at Kingsgate Mall in order to relocate a nearby retail store to that site. According to plaintiff's evidence, Big Lots' representatives repeatedly assured plaintiff's representatives during meetings in October 2003 that once Big Lots' Real Estate Committee gave its approval, a lease agreement between the parties for the Office Depot site at the Kingsgate Mall was a "done deal," with only resolution of minor details and execution of the paperwork remaining.
 {¶ 4} In November 2003, the parties exchanged several letters of intent negotiating the terms of a potential lease agreement. All of plaintiff's letters of intent stated the letters were not intended to be binding and were contingent on execution of a mutually acceptable lease agreement for the premises. Big Lots' sole letter of intent contained the following notation: "This letter shall signify our intent to enter into a lease *Page 3 
based on the terms set out" in the letter, but "[n]o commitment by Big Lots Stores Inc. shall be considered binding until all of the terms are reduced to a written lease, which has been reviewed and approved by our Legal Department and signed by an officer of the Company." (Nov. 17, 2003 letter from Big Lots to Skilken Properties.)
 {¶ 5} On December 15, 2003, Big Lots' Real Estate Committee approved Big Lots' leasing the Office Depot site at Kingsgate Mall. In January 2004, plaintiff permitted Office Depot to terminate its lease at the site in return for Office Depot's paying $600,000 to plaintiff. Plaintiff's evidence states it permitted Office Depot to terminate its lease obligations in reliance on Big Lots' repeated assurances that the approval of its Real Estate Committee meant Big Lots would lease the Office Depot site. Plaintiff's evidence further indicates that in reliance on Big Lots' representations, plaintiff spent time, money and resources to modify the former Office Depot site and to obtain necessary easements and agreements with co-tenants to meet Big Lots' standards and specifications.
 {¶ 6} Between January and July 2004, the parties exchanged five working drafts of a written lease agreement to resolve open issues and finalize the terms. Although the parties revised the proposed lease agreement numerous times, each of the drafts contained an integration clause stating that the written lease agreement set forth "all" promises between the parties. Significantly, each draft also included a paragraph stating that "[t]he submission by Tenant to Landlord of this Lease shall have no binding force or effect, shall not constitute an option for the leasing of the Demised Premises, nor confer any rights or impose any obligations upon either party" until the Landlord and Tenant execute the lease and deliver "a fully executed original counterpart thereof to Tenant." (¶ 36 of Draft Lease Agreements.) *Page 4 
 {¶ 7} As late as July and August 2004, the parties were still negotiating the terms of the lease agreement. On July 16, 2004, plaintiff's counsel sent Big Lots' counsel an e-mail noting "several issues which are still open." The following month, on August 27, 2004, plaintiff's counsel sent Big Lots' counsel an additional letter stating, "I believe that once we are done with this issue [regarding signage] that we are in fact done with our negotiations. Upon receipt of your confirmation that you are working on execution drafts of the lease, I will therefore expedite execution of the amendment to the REA [reciprocal easement agreement]. Thank you very much."
 {¶ 8} The parties never finalized and executed a written lease agreement. Instead, Big Lots' existing landlord in the area offered financial concessions for Big Lots to keep its nearby retail store at the existing location rather than relocate the store to Kingsgate Mall. Ultimately, Big Lots agreed to stay at its existing location in the area and ended the negotiations with plaintiff.
 {¶ 9} Plaintiff subsequently filed an action against Big Lots to recoup damages plaintiff allegedly suffered as a result of Big Lots' refusal to lease the Kingsgate Mall site. Plaintiff voluntarily dismissed its original complaint against Big Lots, but on April 2, 2007 re-filed a complaint against Big Lots asserting five claims: breach of contract, promissory estoppel, negligent misrepresentation, breach of good faith and fair dealing, and tortious interference with a business relationship. In an August 24, 2007 entry, the trial court granted in part Big Lots' Civ. R. 12(B)(6) motion and dismissed all but plaintiff's breach of contract and promissory estoppel claims. The parties filed subsequent cross-motions for summary judgment, and, in a March 28, 2008 decision, the trial court dismissed plaintiff's remaining claims. *Page 5 
 {¶ 10} The trial court concluded plaintiff's breach of contract claim failed for lack of a written contract demonstrating that the parties agreed on all material terms of the lease. With respect to the promissory estoppel claim, the court determined plaintiff's reliance on Big Lots' oral assurances that it agreed to lease the subject premises was unreasonable as a matter of law in the face of Big Lots' repeatedly expressed intent not to be bound until the parties executed a written lease agreement. On April 9, 2008, the trial court entered judgment for Big Lots and dismissed plaintiff's complaint in its entirety.
 {¶ 11} Plaintiff appeals, assigning the following errors:
 Assignment of Error #1
 The Trial Court erred in granting summary judgment against plaintiff dismissing its claims against Defendant for breach of contract, promissory estoppel and tortuous [sic] interference claims.
 Assignment of Error #2
 The Trial Court erred in dismissing Plaintiff[']s claims as the Trial Court made a factual determination that Plaintiff relied upon the representations of Defendants to its detriment.
 Assignment of Error #3
 The Trial Court erred in granting Defendant's Motion for Summary Judgment as there were clearly disputed issues of material fact between the parties thus entitling Plaintiff to a trial of the case.
 Assignment of Error #4
 The Trial Court erred in dismissing Plaintiff's claim for damages for promissory estoppel as the Court clearly confirmed in its decision that a reliance occurred with Plaintiff and Defendant as well as a Third Party (Office Depot) having been aware of such reliance. *Page 6 
 {¶ 12} An appellate court's review of summary judgment is conducted under a de novo standard. Coventry Twp. v. Ecker (1995),101 Ohio App.3d 38, 41; Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579,588. Summary judgment is proper only when the parties moving for summary judgment demonstrate: (1) no genuine issue of material fact exists, (2) the moving parties are entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ. R. 56; State ex rel. Grady v. State Emp.Relations Bd. (1997), 78 Ohio St.3d 181.
 {¶ 13} Pursuant to Civ. R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. The moving party, however, cannot discharge its initial burden under this rule with a conclusory assertion that the non-moving party has no evidence to prove its case; the moving party must specifically point to evidence of a type listed in Civ. R. 56(C), affirmatively demonstrating that the non-moving party has no evidence to support the non-moving party's claims. Id.; Vahila v. Hall (1997), 77 Ohio St.3d 421. Once the moving party discharges its initial burden, summary judgment is appropriate if the non-moving party does not respond, by affidavit or as otherwise provided in Civ. R. 56, with specific facts showing that a genuine issue exists for trial. Dresher, at 293; Vahila, at 430; Civ. R. 56(E). See, also, Castrataro v. Urban (Mar. 7, 2000), Franklin App. No. 99AP-219.
 {¶ 14} In that context, plaintiff asserts in its appellate brief that all of its causes of action in the trial court and the four assignments of error on appeal revolve around the *Page 7 
central concept of promissory estoppel. Specifically, plaintiff maintains, they turn upon the question of whether plaintiff could "reasonably" rely upon Big Lots' oral assurances that the lease agreement was a "done deal" once Big Lots' Real Estate Committee approved it. Plaintiff thus does not separately argue each of its four assignments of error. See App. R. 16(A)(7) (noting an appellate brief shall include "[a]n argument containing the contentions of the appellant with respect to each assignment of error"). Rather, plaintiff merges its four assignments of error into one and argues summary judgment was improperly granted because the "reasonableness" of plaintiff's reliance on Big Lots' manifestations about leasing the subject premises was a disputed factual issue, not a legal issue for the trial court to determine on summary judgment.
 {¶ 15} "`Promissory estoppel is a quasi-contractual concept where a court in equity seeks to prevent injustice by effectively creating a contract where none existed.'" Interstate Gas Supply, Inc. v. CalexCorp., Franklin App. No. 04AP-980, 2006-Ohio-638, at ¶ 103, quotingTelxon Corp. v. Smart Media of Delaware, Inc., Summit App. No. 22098,2005-Ohio-4931, at ¶ 58. Under the doctrine of promissory estoppel, "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." McCroskey v. State (1983),8 Ohio St.3d 29, 30 (quoting Restatement of the Law, Contracts 2d [1973], Section 90); Talley v. Teamsters Loc. No. 377 (1976), 48 Ohio St.2d 142,146.
 {¶ 16} In order to ultimately prevail on its promissory estoppel claim, plaintiff thus must demonstrate that (1) Big Lots made a clear and unambiguous promise (2) upon which one would reasonably and foreseeably rely and (3) plaintiff actually relied on the *Page 8 
promise (4) to plaintiff's detriment. See Interstate Gas Supply Co.,Inc., supra, at ¶ 105. Although making, keeping and relying upon alleged promises "are factual issues, typically for the jury, a court may deem certain circumstances objectively unreasonable, as when it finds that `reasonable minds could come to but one conclusion.' Civ. R. 50(A)(4) (B)." Id. Reasonableness, foreseeability and detriment are viewed objectively. Id.
 {¶ 17} As in the trial court, plaintiff acknowledges on appeal the general rule under the statutes of frauds that a valid lease for commercial premises requires a signed, written lease agreement. See R.C. 1335.04 and 1335.05. Plaintiff admits no written contract exists here. Instead, plaintiff asserts this case qualifies as an exception to the statutes of frauds and is enforceable pursuant to promissory estoppel. Plaintiff argues that, as a result of Big Lots' oral assurances and manifestations, plaintiff's principals and chief negotiator "felt" a "handshake deal" was in place, causing plaintiff to act to its detriment by spending time, money and resources to ready the former Office Depot site for Big Lots' occupancy.
 {¶ 18} Specifically, plaintiff asserts its principals and chief negotiator reasonably relied upon the following manifestations of Big Lots' intent to lease the subject premises: (1) the action of Big Lots' counsel in sending a draft lease to plaintiff, (2) Big Lots' repeated oral assurances that approval of its Real Estate Committee meant Big Lots accepted a lease deal with plaintiff, and (3) the Real Estate Committee's approval of the lease deal on December 15, 2003. For purposes of our analysis we assume Big Lots clearly and unambiguously promised orally to lease the former Office Depot site at the Kingsgate Mall once Big Lots' Real Estate Committee approved the deal. We nonetheless *Page 9 
conclude no reasonable reliance can exist on such a promise under the circumstances present here.
 {¶ 19} Central to resolving the issue of plaintiff's reliance on Big Lots' oral assurances is determining the significance of the conditional, or contingency, language contained in the letters of intent and in each draft of the lease agreement. All of the letters of intent and draft lease agreements clearly and expressly articulated both parties' desire that no promises would be binding unless and until the promises and the terms of a lease agreement were reduced to writing and incorporated into a signed agreement. Indeed, the documents' conditional language was beneficial not only to Big Lots, but to plaintiff as well: if, during the course of negotiations, another prospective tenant had offered plaintiff a higher rent than Big Lots was willing to pay, plaintiff would have been free to accept it. (Keglewitsch Depo., 106.)
 {¶ 20} Under well-established Ohio law, courts will give effect to the manifest intent of the parties where clear evidence demonstrates they do not intend the terms of an agreement to bind them until the agreement is formalized in a written document that both parties sign. Richard A.Berjian, D.O., Inc. v. Ohio Bell Tel. Co. (1978), 54 Ohio St.2d 147,151. Here, in light of Big Lots' manifested intent that it would not become obligated until the lease was reduced to writing, its legal department reviewed and approved it, and one of its officers signed it, plaintiff's reliance on Big Lots' oral assurances of intending to finalize an agreement with plaintiff was unreasonable as a matter of law.
 {¶ 21} The parties here were sophisticated business entities, and plaintiff's principals and chief negotiator had extensive experience in commercial leases. In affidavits and deposition testimony, they testified their experience taught them that until *Page 10 
lease negotiations are consummated in a written, executed lease, a distinct possibility exists that the deal may not be consummated. Becky Keglewitsch, plaintiff's chief negotiator, testified that five to ten percent of the commercial lease transactions she handled for plaintiff fell through after both parties agreed on a letter of intent to lease site. She also testified she knew, as a former Big Lots employee who negotiated commercial leases for Big Lots, both that Big Lots' legal department had to approve a lease after the Real Estate Committee initially approved it, and that proposed lease deals fell through after Big Lots' Real Estate Committee approved them. Here, as late as July and August 2004, plaintiff's own counsel acknowledged issues remained open and negotiations between the parties were not done.
 {¶ 22} The record thus presents no basis for plaintiff's contention that its reliance was reasonable. To hold otherwise would render potential tenants like Big Lots incapable of protecting themselves against liability during the course of negotiations. As this court observed in Carcorp, Inc. v. Chesrown Oldsmobile-GMC Truck, Inc., Franklin App. No. 06AP-329, 2007-Ohio-380, at ¶ 20, "reliance on a statement of future intent made prior to the conclusion of negotiations in a complex business transaction is unreasonable as a matter of law. * * * Such a rule is particularly appropriate when two sophisticated business entities are involved in negotiations." Id. As this court explained, "[u]ntil the documents are signed and delivered the game is not over. [Business men and women] would be undesirably inhibited in their dealings if expressions of intent and the exchange of drafts were taken as legally binding agreements." Id., citing Continental Fin.Servs. Co. v. First Natl. Boston Corp. (D.Mass. 1984), No. CA-82-1505-T, at 9-10 (rejecting claim of promissory estoppel between sophisticated parties to a complex commercial transaction). *Page 11 
 {¶ 23} In the final analysis, plaintiff seeks to hold Big Lots responsible for the risks plaintiff undertook in voluntarily releasing Office Depot from its lease obligations and in making improvements to the site at the Kingsgate Mall before the parties here finalized all the terms and integrated them into a signed, written lease agreement. The parties' expressed intent that they not be bound until they executed a written lease agreement, the understanding of plaintiff's principals and chief negotiator that no deal exists without a written lease, together with the continuing negotiation of the lease terms as late as August 2004, compels us to conclude that plaintiff's reliance on Big Lots' oral assurances about leasing the premises at Kingsgate Mall was unreasonable as a matter of law.
 {¶ 24} Accordingly, the trial court properly granted summary judgment in favor of Big Lots on plaintiff's claim of promissory estoppel. We overrule plaintiff's four assignments of error and affirm the judgment of the trial court.
Judgment affirmed.
 McGRATH, P.J., and KLATT, J., concur. *Page 1