OPINION
{¶ 1} Plaintiff-appellant SST Bearing Corporation ("SST") sued defendant-appellee Geheb Electric Industrial Supply Company ("Geheb") for breach of contract, promissory estoppel, and breach of the implied covenant of good faith and fair dealing. Following a bench trial, the trial court ruled in favor of Geheb on all counts. Because the trial court failed to determine whether the statute of frauds applied in this case under R.C. 1302.04(A) and 1302.04(C)(1), we reverse in part and remand this case for further proceedings.
 {¶ 2} SST regularly supplied ball bearings to Geheb for Geheb's customer Postal Tech. SST contended that it ordered these goods from an overseas supplier only after it received a purchase order from Geheb. At trial, it was undisputed that, in March 2000, Geheb ordered ball bearings from SST in a purchase order ("PO") numbered 99270. It was also undisputed that, in March 2000, SST placed an order for a little more than 125,000 ball bearings from its overseas supplier. Geheb accepted and paid for approximately 55,000 of these ball bearings, but refused delivery on further shipments made under this purchase order. SST argued below that Geheb had ordered 125,000 ball bearings in PO 99270 and that — even after SST had mitigated its damages by selling approximately 24,000 of the ball bearings to other companies — Geheb owed SST over $50,000 for the balance of this order.[1] Geheb claimed that it had ordered only 60,000 ball bearings and that, after accounting for the ball bearings that SST had sold to others, it owed SST nothing.
 {¶ 3} SST did not have a copy of PO 99270. And it is unclear from the record whether SST ever received a written order from Geheb. J.D. Varvell of SST testified that Geheb always phoned in its orders for ball bearings and that it never placed written orders. Geheb's witness, Richard Herron, testified that he placed PO 99270 with SST over the phone and also faxed a copy of Geheb's order. Herron stated that, at one point, he had a written copy of PO 99270, but that it had been removed from Geheb's files in the ordinary course of business. Because neither party had a copy of the purchase order in question, SST attempted to establish the terms of PO 99270 through other evidence. Specifically, SST produced a copy of a sales order dated March 2000 from SST to its overseas supplier. The sales order was for a little more than 125,000 ball bearings. C. Winifred Scott, the president of SST, testified that he placed this order based on Geheb's PO 99270, though he admitted that he never saw a copy of the purchase order. SST also produced a copy of a release schedule for 125,000 ball bearings allegedly associated with PO 99270 and claimed that Geheb did not initially object to these release dates. SST also argued that an e-mail from Herron to its customer Postal Tech constituted an admission that Geheb had ordered 125,000 ball bearings.
 {¶ 4} According to Herron, Geheb ordered only 60,000 ball bearings in PO 99270. Herron testified that he supplied SST with release dates for 125,000 ball bearings only after denying that Geheb had ordered that many. Herron explained that he gave SST release dates because he was told that SST had to have dates to put "in its system" so that it could "move" the ball bearings in the future. As far as the e-mail, Herron presented an explanation to the court consistent with Geheb's position that the e-mail did not constitute an admission.
 {¶ 5} Following a trial and post-trial briefing by both parties, the trial court found in favor of Geheb on all claims. In its sole assignment of error, SST now asserts that the trial court erred by entering judgment in favor of Geheb. Although SST urges this court to apply a de novo standard of review, we are persuaded that SST is raising a manifest-weight claim. The standard of review for a manifest-weight claim is highly deferential. We will not reverse a judgment on the manifest weight of the evidence provided that there is some competent, credible evidence going to all the essential elements of the case. C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, 376 N.E.2d 578, syllabus.
 SST's Breach-of-Contract Claim {¶ 6} We are unable to reach the merits of SST's assigned error as it pertains to its breach-of-contract claim because the trial court failed to make a finding necessary for our review.
 {¶ 7} The parties to this case contend, and we agree, that Ohio's version of the Uniform Commercial Code controls SST's breach-of-contract claim. In pertinent part, R.C. 1302.04(A) codifies the statute of frauds, stating that "[e]xcept as otherwise provided in this section, a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought * * *." Because of the amount in controversy, R.C. 1302.04(A) applied to this case. However, an exception to R.C. 1302.04(A) exists where the goods at issue "are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business * * *." R.C. 1302.04(C)(1). At trial, SST argued that the ball bearings were specially manufactured. Geheb argued that they were not. Both parties offered evidence to support their respective positions. In its decision, the trial court never resolved this issue. As an appellate court, we may not independently determine whether the ball bearings were "specially manufactured" since the weight to be given the evidence and the credibility of the witnesses were primarily for the trier of fact. See State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus. Without such a finding by the trial court, we are unable to determine whether SST had to establish the existence of a written contract signed by a representative of Geheb, or whether SST could use other means in an attempt to prove its contract claim. In other words, we are unable to discern the "essential elements" of SST's claim without first knowing which provision of the Uniform Commercial Code applied. Consequently, we can not review whether the trial court's decision was against the manifest weight of the evidence. See C.E. Morris Co., supra
 {¶ 8} Therefore, due to the trial court's failure to make a necessary finding, we must reverse its judgment in part and remand SST's breach-of-contract claim. Should SST elect to retry this claim, the trial court must first determine whether the ball bearings at issue were "specially manufactured." If they were, then the exception to R.C. 1302.04(A) applies. If the trial court determines that the ball bearings were not specially manufactured, then SST's claim will fail as a matter of law unless it can establish the existence of a written contract signed by a representative of Geheb. See R.C. 1302.04(A).
 SST's Promissory-Estoppel Claim {¶ 9} The doctrine of promissory estoppel is as follows: "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Shampton v. Springboro, 98 Ohio St.3d 457,2003-Ohio-1913, 786 N.E.2d 833, at ¶ 33, quoting Restatement of the Law 2d, Contracts (1981), Section 90. To prevail on a claim of promissory estoppel, "[t]he party claiming the estoppel must have relied on conduct of an adversary in such a manner as to change his position for the worse, and that reliance must have been reasonable in that the party claiming estoppel did not know and could not have known that its adversary's conduct was misleading. Ohio State Bd. of Pharmacy v. Frantz (1990),51 Ohio St.3d 143, 145, 555 N.E.2d 630, citing Heckler v. CommunityHealth Serv. (1984), 467 U.S. 51, 59, 104 S. Ct. 2218.
 {¶ 10} The trial court provided no analysis for its decision finding in favor of Geheb on this claim. Upon a review of the record, however, we hold that the trial court's decision was not against the manifest weight of the evidence, as Geheb presented competent, credible evidence that it never promised to purchase 125,000 ball bearings from SST. C.E. Morris Co., supra. Consequently, we affirm the judgment of the trial court as to this claim.
 Implied Covenant of Good Faith and Fair Dealing {¶ 11} The covenant of good faith and fair dealing requires that parties to a contract deal honestly with each other and act reasonably in the enforcement of the contract. Littlejohn v.Parrish, 1st Dist. No. C-040720, 2005-Ohio-4850, at ¶ 27. In the present case, SST contends that the trial court erred by holding that Geheb did not violate this covenant when it allowed PO 99270 to be destroyed. But Herron testified that he did not keep a record or copy of PO 99270 because he believed Geheb had fulfilled its obligation under this purchase order, and because he did not anticipate that a lawsuit would arise in connection with it. We hold that this was competent, credible evidence to support the trial court's decision that there was no bad faith on the part of Geheb. See C.E. Morris Co., supra. Consequently, we sustain the trial court's judgment finding in favor of Geheb on this claim.
 {¶ 12} Therefore, the trial court's judgment is affirmed in part and reversed in part, and this cause is remanded for a new trial on SST's breach-of-contract claim, or for further proceedings consistent with this decision.
Judgment accordingly.
Hildebrandt, P.J., and Hendon, J., concur.
[1] These factual allegations were included in an amended complaint that SST attempted to file in the trial court. The trial court, however, never ruled on SST's motion for leave to amend its complaint. Nevertheless, SST tried its case as though its motion had been granted, and Geheb defended against these allegations. In accordance with Civ.R. 15(B), we conclude that Geheb was not prejudiced by the trial court's failure to rule. On remand, however, as a procedural matter the trial court should address this issue.