[Cite as *Filo v. Liberato*, 2013-Ohio-1014.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| ANTHONY FILO dba<br>FILO CONSTRUCTION, INC. | ) | CASE NO. 11 MA 18 |
| | ) | |
| PLAINTIFF-APPELLANT | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| MICHAEL LIBERATO | ) | |
| | ) | |
| DEFENDANT-APPELLEE | ) | |

CHARACTER OF PROCEEDINGS: Civil Appeal from the Court of Common Pleas of Mahoning County, Ohio Case No. 10 CV 1257

JUDGMENT: Affirmed in Part.
Reversed and Remanded in Part.

APPEARANCES:

For Plaintiff-Appellant: Atty. Tim Tusek
945 Windham Court, Suite 3
Boardman, Ohio 44512

For Defendant-Appellee: Atty. Alfred J. Fleming
Alfred J. Fleming Co., L.P.A.
400 City Centre One
Youngstown, Ohio 44503

JUDGES:

Hon. Cheryl L. Waite
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated: March 15, 2013

WAITE, J.

{¶1} Appellant, Anthony Filo, was a subcontractor on a commercial construction project owned by Appellee, Michael Liberato. Appellant approached Appellee during August of 2006 because the general contractor was behind in making payments to Appellant. According to Appellant, Appellee promised him that he would be fully paid. Appellant subsequently received $7,000.00 of the alleged $33,600.00 owed. Appellee also released payment in full to another subcontractor. Appellant was never paid the remainder of the amount owed.

{¶2} In March of 2010, Appellant filed suit against Appellee for payment. The trial court granted a Civ.R. 12(B)(6) motion and dismissed all of Appellant's claims. The judgment of the trial court dismissing Appellant's conversion claim is affirmed. The trial court's dismissal of Appellant's promissory estoppel, unjust enrichment and fraud claims is reversed, as these claims are supported by the pleadings.

Factual and Procedural History

{¶3} Appellant, Anthony Filo, provided materials and services to build curbing, sidewalks, footers, floors and a trash enclosure as well as other excavation and concrete work on a commercial construction project at 789 Wick Avenue. Appellant performed the work under contract to D & R Construction and Maintenance, the general contractor in charge of the Belleria Pizza commercial building project. Appellee, Michael Liberato, is the owner of the property at 789 Wick Ave., where Appellant worked as a subcontractor pursuant to the contract with D & R Construction. According to Appellant, at some point during August of 2006 he was

owed $33,600.00. Appellant was not receiving payment from D & R Construction and approached Appellee directly about the amount due. According to Appellant, Appellee promised him full payment. Appellant later received $7,000.00, but never received the balance. Appellant alleges that Appellee controlled the draws on the financial institution financing the project and Appellee released payment to at least one other subcontractor, who performed work after Appellant, without paying Appellant as promised. As a result, on March 31, 2010, Appellant filed a complaint against Appellee, alleging promissory estoppel, unjust enrichment, conversion and fraud.

**{¶4}** On May 19, 2010, Appellee responded to the complaint with a motion to dismiss under Civ.R. 12(B)(6). According to Appellee, the suit was barred by the statute of frauds, which requires that any contract primarily for the provision of goods exceeding $500.00 in value, in addition to services, be made in writing. The statute also requires that a promise to pay the debt of another must be in writing. Appellee emphasized that the allegations in the complaint clearly identify Appellant as a subcontractor and that the only contract referred to in the complaint is that involving Appellant and D & R Construction, not Appellee.

**{¶5}** On August 16, 2010, Appellee filed a motion to dismiss an amended complaint, citing the same grounds as in the original Civ.R. 12(B)(6) motion. On August 30, 2010, Appellant filed in opposition to Appellee's motion to dismiss. Appellant argued that the allegations in the amended complaint are sufficient to establish a "leading object" exception or excuse to the statute of frauds, and are sufficient to establish the elements of promissory estoppel. According to Appellant,

Appellee is not protected by the statute of frauds because not only has he retained the benefit of Appellant's work, the underlying purpose for his verbal promise that the subcontractor would be paid was to preserve Appellee's own pecuniary interest in the completion of the construction project. On January 7, 2011, the trial court dismissed the amended complaint. The matter is now before us on Appellant's timely appeal.

Argument and Law

Standard of Review

{¶6} A trial court's decision granting a Civ.R. 12(B)(6) motion to dismiss is reviewed de novo. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362. "In order for a complaint to be dismissed under Civ.R. 12(B)(6) for failure to state a claim, it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to relief." *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 418, 2002-Ohio-2480, 768 N.E.2d 1136, ¶5, citing *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus. When reviewing whether a motion to dismiss should be granted, "we must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party" *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). "[A]s long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss." *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 145, 573 N.E.2d 1063 (1991).

{¶7} The trial court's decision relies on the statute of frauds, R.C. 1335.05; Civ.R. 10(D)(1); and R.C. 4113.61(A)(1) to dismiss Appellant's complaint. Appellee's

-4-

original motions to dismiss and appellate brief are based on the same laws. Appellant's first and second assignments of error address the trial court's reliance on the statute of frauds to dismiss his promissory estoppel claim and will be discussed together for this reason. Appellant's third assignment of error also concerns the statute of frauds, but will be considered separately because it does not deal with promissory estoppel, but instead, raises the "leading object" rule to overcome application of the statute of frauds. As Appellant's fourth and fifth assignments of error both address the Prompt Payment Act, R.C. 4113.61, they will also be considered together.

### Assignment of Error No. 1

The Trial Court erred by determining that the statute of frauds requirements regarding "promises to pay the debts of another" bar Filo's promissory estoppel claim since, as alleged in Filo's Amended Complaint, the leading object of Liberato's promise was to benefit himself.

### Assignment of Error No. 2

The Trial Court erred by determining that the statute of frauds requirements regarding "interests in land" bar Filo's Complaint since the agreements involved only "affected land."

{¶8} The statute of frauds, R.C. 1335.05, was last amended in 1976 and provides:

**Certain agreements to be in writing.** No action shall be brought whereby to charge the defendant, upon a special promise, to answer for the debt, default, or miscarriage of another person; * * * or upon a contract or sale of lands, tenements, or hereditaments, or interest in or concerning them * * * unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized.

Civ.R. 10(D)(1) also requires that claims based on contract include the written instrument, and states that:

When any claim or defense is founded on an account or other written instrument, a copy of the account or written instrument must be attached to the pleading. If the account or written instrument is not attached, the reason for the omission must be stated in the pleading.

{¶9} The thrust of Appellant's argument in his first assignment of error is that he is entitled to compensation for the work benefitting and retained by Appellee that was completed in reliance on Appellee's oral promise that he would be paid. Appellant contends that the doctrine of promissory estoppel should be applied in this instance to prevent Appellee from retaining the benefit of Appellant's work without compensating Appellant. The trial court held that because promises to pay the debt of another are subject to the statute of frauds and Appellant failed to allege that a written promise existed, his claim for promissory estoppel "cannot be proven and

must be dismissed." (1/7/11 J.E., p. 4.) The trial court was mistaken in this conclusion.

**{¶10}** Promissory estoppel, itself, does not operate as an exception to the statute of frauds. Instead, where an agreement is required by the statute to be in writing and no writing exists, promissory estoppel specifically exists to provide an action for damages to compensate a party injured due to his reliance on an unenforceable promise. *Olympic Holding Co., L.L.C. v. ACE Ltd.*, 122 Ohio St.3d 89, 2009-Ohio-2057, 909 N.E.2d 93, ¶38. "An action for damages under promissory estoppel provides an adequate remedy for an unfulfilled or fraudulent promise" because it allows compensation "where the requisites of contract are not met, yet the promise should be enforced to avoid injustice." *Id.* at ¶39, citing *Doe v. Univision Television Group, Inc.*, 717 So.2d 63, 65 (Fla.App.1998). " 'To be successful on a claim of promissory estoppel '[t]he party claiming the estoppel must have relied on conduct of an adversary in such a manner as to change his position for the worse and that reliance must have been reasonable in that the party claiming estoppel did not know and could not have known that its adversary's conduct was misleading." ' " *Olympic Holding* at ¶39, quoting *Shampton v. Springboro*, 98 Ohio St.3d 457, 2003-Ohio-1913, 786 N.E.2d 883 ¶34. "Thus, promissory estoppel is an adequate remedy for a fraudulent oral promise or breach of an oral promise, absent a signed agreement." *Olympic Holding* at ¶40.

**{¶11}** In *Olympic Holding*, the Supreme Court held that the plaintiff had a valid claim for promissory estoppel that survived a determination that the underlying contract was unenforceable, and that such a claim "is an adequate remedy to recover

damages it sustained in detrimentally relying upon [the promisor's] allegedly false promise." *Id.* at ¶52.

**{¶12}** The elements of a promissory estoppel claim as described by the Supreme Court in *Olympic Holding* are (1) conduct (such as an oral promise), on which a claimant, (2) relied, when he or she did not and could not know that the conduct was misleading, (3) to his or her detriment. Appellee's reliance on *McCarthy, Lebit, Crystal & Haimon Co., L.P.A v. First Union Management, Inc.*, 87 Ohio App.3d 613, 622 N.E.2d 1093 (8th Dist.1993) to require that Appellant must allege a misrepresentation that the statute of frauds had been complied with or that there must be a promise to sign a memorandum of the agreement is misplaced. These additional conditions in *McCarthy* may be relevant as a defense if a plaintiff is using promissory estoppel solely to avoid the statute of frauds, but may not serve as a bar to promissory estoppel as a cause of action for damages, which is explicitly allowed in *Olympic Holding*. The general rules of pleading require only "(1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled" and that "[e]ach averment of a pleading shall be simple, concise, and direct." Civ.R. 8(A) and (E)(1). Finally, if any set of facts alleged in the complaint can be construed to allow recovery, the trial court may not dismiss for failure to state a claim.

**{¶13}** Appellant alleged that he told Appellee he had not been paid for work done on Appellee's property and was owed $33,600.00. According to Appellant, Appellee responded by promising that he would be paid. Once he was promised payment, and in reliance on that promise, Appellant continued to complete his portion

of the project and did not file a mechanic's lien against the work done or take other action to preserve his financial interest in the project. (There is some mention of a mechanic's lien by both parties, but no evidence of a lien properly appears in the record). Appellant received a payment of $7,0000.00 after his discussion with Appellee, but never received the balance of $26,600.00 that he claims was owed. Thus, according to Appellant, due to his reliance on the promise he suffered $26,600.00 in damages. (8/6/11 Amend. Compl., ¶1-15.) Appellant further alleged that Appellee controlled draws on the financial institution that financed the project, and that after promising him payment Appellee instead released full payment to another subcontractor, who performed work only after Appellant had completed the majority of his own work. (8/6/11 Amend. Compl., ¶1-15.) Hence, Appellant seeks damages from Appellee, not necessarily because of some contractual agreement but because Appellee promised to pay for work performed on his property by Appellant and because such work provided Appellee a benefit.

{¶14} While Appellant mentions the issue of the "leading object" rule in his first assignment, this rule is not necessary to our discussion as to whether Appellant adequately alleged promissory estoppel and will be dealt with later, where appropriate. As the statute of frauds does not, in any way, bar a claim for detrimental reliance, the trial court erred in relying on this statute as the basis for a Civ.R. 12(B)(6) dismissal.

{¶15} The factual merits of Appellant's claim were not before the trial court and are not before us, now. The allegations in the complaint meet the pleading requirements of Civ.R. 8 and contain the necessary elements of a claim for

promissory estoppel, an equitable remedy that is not barred by the statute of frauds. *Olympic Holding*, ¶52. A Civ.R. 12(B)(6) motion tests the sufficiency of the pleading only, not the merits of the claim. Whether Appellant can prove the facts as he presents them is an issue for a later determination by the trial court. It was error for the court to dismiss Appellant's promissory estoppel claim because a motion to dismiss may not be granted where there exists a set of facts consistent with the complaint that would allow recovery. *York, supra*, 60 Ohio St.3d 143, 573 N.E.2d 1063 (1991). Whether or not Appellant can prove reliance once the court looks to evidence beyond mere allegations in a pleading presents a different question for another day.

{¶16} The trial court also erred in dismissing the promissory estoppel claim under the theory that the claim concerned an interest in land, and was for this reason also barred by the statute of frauds. The alleged promise that forms the basis of the promissory estoppel claim is the promise to pay money for construction work completed, not to convey an interest in real property. The trial court seems to believe that this matter involves an interest in land, in part because Appellant claims he did not file a mechanic's lien in order to show that he relied on Appellee's promise to pay to his own detriment. This reference to a mechanic's lien does not alter the nature of the underlying promise at issue, here. Again, Appellant's claim appears to be pure detrimental reliance on a promise. For this, he seeks only money damages for work done pursuant to that promise. In no way does he appear to allege any interest in real property beyond this monetary damage. Specifically, Appellant does not seek in this suit to obtain a lien or any other interest in or title to the subject property. Again,

since the allegations in the complaint sustain an interpretation that allows recovery, any reliance on the statute of frauds to dismiss the complaint is misplaced. Appellant's first and second assignments of error are sustained and we hereby reverse the trial court's decision to dismiss Appellant's promissory estoppel claim under both of the rationales used by the court.

Assignment of Error No. 3

The Trial Court erred by relying on the statute of frauds to dismiss Filo's fraud claim due to a lack of "justifiable reliance" since the leading object of Liberato's promise, as alleged in Filo's Amended Complaint, was to benefit himself.

**{¶17}** In Appellant's first assignment he mentions the "leading object" rule, but does not rely on this theory for the body of his argument. In this assignment, however, Appellant argues that a writing is also not required to enforce the oral promise in this instance because the promise was made to protect Appellee's own pecuniary interest in the completion of the project. In addition to the general rules of pleading, when alleging fraud, "the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Civ.R. 9(B). Appellant specifically alleges in the amended complaint: "The leading object of Defendant's [Appellee's] promise to Plaintiff [Appellant] was to serve Defendant's own pecuniary or business purpose, i.e. detering[sic] Plaintiff from filing a mechanic's lien against the Property and having Plaintiff complete the Project." (8/6/11 Amend. Compl., ¶11.) Unlike the doctrine of promissory estoppel, which creates a remedy for parties who could not otherwise

recover because they acted to their detriment on an unenforceable oral promise, the "leading object" rule excuses the writing requirement of the statute of frauds and, in effect, makes an oral promise into an enforceable contract. The driving principle of the leading object rule is to prevent the use of the writing requirement to "effectuate a wrong" "which the statute's enactment was to prevent." *Wilson Floors v. Sciota Park, Ltd.*, 54 Ohio St.2d 451, 460, 377 N.E.2d 514 (1978).

{¶18} The use of the "leading object" rule is a matter of first impression in this district. Appellant's complaint contains several allegations. The first, that he relied on Appellee's promise to pay for the benefit conferred by the work Appellant performed for Appellee, falls under a classic promissory estoppel claim and so is not barred by the statute of frauds, as already discussed. The second, however, is that Appellee promised to pay because Appellant would have stopped work and/or taken other legal action that would slow or end construction. At first blush, this promise by Appellee looks to be a promise to pay the debt owed by the general contractor. Ordinarily, this promise to pay the debt of another is required to be in writing, undoubtedly because it would ordinarily not be apparent why one would undertake to pay a debt one does not owe. However, where it is readily apparent that it is the promisor who will benefit from this seemingly altruistic act, the statute of frauds and its protections need not be invoked. The Ohio Supreme Court explains: "When the leading object of the promisor is not to answer for another's debt but to subserve some pecuniary or business purpose of his own involving a benefit to himself, his promise is not within the statute of frauds, although the original debtor may remain liable." *Wilson Floors*, *supra*, syllabus. In Ohio, when the rule began to emerge as a

defense or excuse to the requirements of the statute of frauds, one test for the application of the rule was whether the promisor had become primarily or solely liable for the debt by making the promise. The Supreme Court dispensed with the primary liability requirement in *Wilson Floors*, and clarified two separate tests for the leading object rule, the second of which appears applicable to the facts as alleged by Appellant:

> Under the second test, it is of no consequence that when such promise is made, the original obligor remains primarily liable or that the third party continues to look to the original obligor for payment. So long as the promisor undertakes to pay the subcontractor whatever his services are worth irrespective of what he may owe the general contractor, and so long as the main purpose of the promisor is to further his own business or pecuniary interest, the promise is enforceable.

*Wilson Floors* at 459, referencing *Williston on Contracts* (3 Ed.1960). This formulation of the leading object rule has been infrequently, but consistently, applied by state and federal courts throughout Ohio.

{¶19} Appellee contends that the *Wilson Floors* Court created a two-part test and that to be enforceable, an oral promise must ensure payment to the subcontractor by explicitly stating that such payment will be made "irrespective of the amount owed to the general contractor" and to "further the owner's business and pecuniary interest." (Appellee's Brf., p. 11). In the context of the Supreme Court's decision, however, the language Appellee relies on actually refers to a prior case used by the Court in making its final decision in *Wilson Floors*. This language is not

part of the decision in *Wilson Floors* itself, and Appellee cites no other authority for his version of this rule. Appellee also urged at oral argument that the law of *Wilson Floors* was inapplicable, because in that case, it was the financing bank that promised payment to the subcontractor and not the project owner. The distinction that Appellee urges, however, is a distinction without a difference. Whether the bank or the owner made the promise to pay the subcontractor, according to the Court, the necessary analysis is only whether the party making the oral promise has a pecuniary interest in the completion of the project. The analysis does not change if the party at interest making the promise is the actual owner or is the bank. Appellee's argument does not reflect the substance of the ruling in *Wilson Floors* or the language of its syllabus. A review of cases applying the rule reflects no application that limits recovery in the manner that Appellee advocates.

{¶20} The leading object rule generally appears in situations similar to the matter at bar: a subcontractor or material supplier has gone unpaid by the general contractor and is promised by the owner, the investor, or the funding source that the debt will be paid in full. The promise is not put into writing and payment is not forthcoming. Under these circumstances the Ohio Supreme Court, the Eighth District Court of Appeals, the Tenth District Court of Appeals, and the United States District Court for the Northern District of Ohio have all found that this oral promise to pay the debt of another is not required to be in writing when the promisor has a pecuniary interest in the outcome that will result from the promise to pay the subcontractor; that is, completion of the subcontractor's work.

{¶21} In *Wilson Floors*, an oral promise was made by a bank officer of the bank financing the project. The bank promised the subcontractor "that payments would be forthcoming upon a resumption of work." The Court held this was an enforceable oral contract to pay the debts of another because "the bank made its guarantee to Wilson to subserve its own business interest of reducing the costs to complete the project." *Id.* at 454 and 460. In *F&D Siding Services v. Commarato*, 8th Dist. No. 78038, 2001 WL 455829 (April 26, 2001), the owner's oral promise to personally repay the debts of his various businesses to the subcontractor and supplier who provided siding materials and services to multiple construction projects was held valid and enforceable due to the promisor's pecuniary interest in these continued services. The subcontractor's reliance on the promise in this instance was reasonable in the context of a history of oral agreements between the parties and partial payment on demand by means of personal checks. "Since there was evidence that the defendant's 'leading object' or main purpose in making the promise was to promote his own business interest, the trial court's finding that the statute of frauds did not apply is not against the manifest weight of the evidence." *Id.* *4. In *America's Floor Source, L.L.C. v. Joshua Homes*, 191 App.3d 493, 2010-Ohio-6296, 946 N.E.2d 799 (10th Dist.), the owner's oral promise to personally pay $96,000.00, a portion of the debt owed by his company, which for the purposes of the statute of frauds was the debt of another, was nevertheless held not to fall within the statute of frauds because the owner's "promise to personally pay a portion of his company's debt was clearly in his own best interest, since he wanted Floor Source to continue

providing Joshua Homes with labor and materials, from which [the owner] and his company were deriving revenue." *Id.* ¶21.

**{¶22}** Appellee attempts to distinguish *America's Floor Source* by suggesting that it is inapplicable because the owner, in the case at bar, did not promise to personally pay. Appellee overlooks the fact that no responsive pleading has yet been filed in this matter and there has certainly been no evidence yet introduced. Hence, Appellee's attempts to distinguish this case are, at best, premature. Moreover, the emphasis on personal liability was important in *America's Floor* because the defendant was the sole owner and shareholder of *Joshua Homes* while the debts were a company, and not a personal, liability. No such distinction appears to be relevant, here. From the facts as alleged in the pleading, there is no similar separation between personal and corporate debts.

**{¶23}** Finally, in *GEM Industries, Inc. v. SunTrust Bank*, 700 F. Supp.2d 915 (N.D. Ohio 2010), the court found that an oral promise to pay the delinquent amounts owed a subcontractor by the bank financing a construction project "does not fall within the statute of frauds, and SunTrust is not entitled to summary judgment on this ground." *Id.* at 921. The Court ultimately did grant the bank summary judgment on other grounds.

**{¶24}** It is important to note that, unlike the various state and federal cases that have applied the leading object exception to a well-developed record that includes discovery, depositions, hearings, and, often, a trial, this matter is still in the pleading stage. Again, under these circumstances, a reviewing court "must presume that all factual allegations of the complaint are true and make all reasonable

inferences in favor of the non-moving party." *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). Viewing the pleading in that light, this pleading contains the facts necessary to remove the alleged oral contract by Appellee to pay the debts of another from the statute of frauds pursuant to the leading object rule. Appellant was a subcontractor engaged in completing a commercial building project for the owner. The pecuniary interest of an owner in the completion of his project may be inferred from the pleading. Whether the promise had the necessary elements of a contract under the circumstances, whether reliance on the promise was justified, and the extent of any damages are issues of fact for the trial court to determine at a later date. These questions cannot be disposed of at the pleading stage without violating the standard of review for a Civ.R. 12(B)(6) motion.

{¶25} The facts as pleaded by Appellant establish the elements of fraud. Whether Appellant can meet his burden to prove those facts is not an issue that can be determined within the scope of review for a Civ.R. 12(B)(6) motion. Appellee's suggestion that Appellant attempted and failed to obtain a mechanic's lien or in the alternative that Appellant obtained judgment on a mechanic's lien or against the general contractor in a separate court proceeding is not material properly before us, or the trial court, when reviewing a Civ.R. 12(B)(6) motion. It is worth noting that, unlike in Appellant's promissory estoppel claims, detrimental reliance is not an element of the leading object exception. Hence, the existence of another judgment may be relevant to the question of whether Appellee, if found liable, could sue another party for contribution. Under the leading object rule it is the completion of the work or provision of additional supplies after the promise to pay that demonstrates

the promisee's reliance. The trial court's determination that noncompliance with the statute of frauds negated any possibility that reliance on the promise was justified is a misapplication of the law regarding the leading object rule. Appellant's third assignment of error is sustained. The trial court's dismissal of Appellant's fraud claim for lack of justifiable reliance is reversed and the matter is remanded for further proceedings.

## Assignment of Error No. 4

The Trial Court erred by determining that Filo failed to allege a wrongful act sufficient to support his claim for fraudulent conversion on the basis that Liberato had no legal duty to pay Filo.

## Assignment of Error No. 5

The Trial Court erred by finding that the Prompt Payment Act (O.R.C. 4113.61) precludes common law claims by a subcontractor against the owner of the project.

{¶26} Appellant's fourth and fifth assignments of error both challenge the trial court's use of R.C. 4113.61, also known as Ohio's Prompt Payment Act, to dismiss a fraudulent conversion claim and additional common law claims. Because the validity of the trial court's reliance on the act is at issue under both assignments, they will be evaluated together.

{¶27} "Fraudulent conversion," in the context of a civil suit, "is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Joyce*

*v. General Motors Corp.*, 49 Ohio St.3d 93, 96, 551 N.E.2d 172 (1990), citing *Zacchini v. Scripps-Howard Broadcasting Co.* 47 Ohio St.2d 224, 226, 351 N.E.2d 454 (1976). Appellant alleges in his amended complaint (1) that Appellee fraudulently represented to Appellant that he would be paid when Appellee knew he would not be paid, (2) Appellee fraudulently represented to the financial institution financing the construction project that Appellant had been paid in full when he had not, (3) the financial institution, believing that Appellant had been paid, released additional funds for the project, and (4) these funds were converted by Appellee who never paid Appellant. Appellant further alleged that his reliance on Appellee's fraudulent promise resulted in damages of $26,600.00.

{¶28} The trial court dismissed Appellant's claim for fraudulent conversion because R.C. 4113 does not contain a provision requiring an owner to pay a subcontractor, and a "claim for conversion fails" where there is no duty to pay. (1/7/11 J.E., p. 6.) Revised Code 4113.61, is titled "**Time limitations for payments to subcontractors and materialmen**" and requires general contractors to submit timely invoices provided by subcontractors with their own invoices to owners. R.C. 4113.61(A)(1). The section sets various timeframes for payment of subcontractors, materialmen, subsubcontractors or other suppliers, and establishes a rate of interest penalty for tardy payment. The statute concludes by defining terms and specifying factors a trial court is to consider when awarding attorney's fees and costs. Nothing in the statute limits the ability of individuals otherwise covered by the statute from obtaining a mechanic's lien as an alternate means of securing payment.

{¶29} In addition, nothing in the statute prohibits, regulates, or in any way discusses payment by the owner of the project directly to any of the entities mentioned in the statute other than referencing the submission of bills by the general contractor to the owner. Although Appellee contends, and the trial court appears to have found, that the statute constitutes a bar to direct recovery by a subcontractor from an owner, nothing in the language of the statute suggests this prohibition. The fact that the statute explicitly regulates the otherwise contractual relationship between a general contractor and the various subcontractors and materialmen who may be attached to a construction project does not mean, absent an explicit statutory provision establishing a bar or prohibition, that the statute bars any other payment or contractual relationship between those parties and any other entity. Nothing in the statute prohibits recovery against an owner for non-payment if the owner has promised payment. Nothing in the statute prohibits recovery for unjust enrichment, which, unless it is specifically barred, is a common law cause of action that is available for the relief of any party who can plead and prove the elements.

{¶30} In addition to the statute, the trial court relied on *Waltmire v. Washington Twp.*, 116 Ohio Misc.2d 30, 764 N.E.2d 520 (2001), for the proposition that a statutory provision that there is no duty to pay bars a claim for conversion. The statute at issue in *Waltmire* actually contained a provision that explicitly held "a member of a police or fire protection agency or student employed on a part-time or seasonal basis by a political subdivision of this state" is not an "employee" within the meaning of the statute. *Id.* at 33 (citing R.C. 4111.01(D) as it is applicable to R.C. 4111.03 and 4111.10).

{¶31} The statute this trial court and Appellee both rely on, R.C. 4113.61, contains no provision protecting an owner from any obligation to a subcontractor. Instead, the Prompt Payment Act establishes timeframes for payment between a general contractor and various parties. Nothing in R.C. 4113.61 negates a duty to pay or prevents a claim for conversion, or any other common law claim. The fact that both a statutory recovery and a conversion theory of recovery based on the same statute were barred to the police officer in *Waltmire* is not relevant to this suit where, unlike *Waltmire*, the applicable statute contains absolutely no language protecting the entity against whom recovery is sought, no language excluding the recovery sought, and no language precluding recovery by the party seeking relief.

{¶32} Although Appellant's conversion claim is not barred by statute or by caselaw, in order for Appellant to state a claim for conversion, he must state an articulable right to the property alleged to have been converted. Appellant claims that he was specifically entitled to the proceeds of a construction loan issued by the bank to Appellee after Appellee made the fraudulent representation that he had been paid in full. Appellant has no claim on the account that received the funds, he has no prior judgment creating a right to this account, and he does not allege that funds were taken from his own account. What Appellant has, arguably, is a right to payment, but a right to payment is not the same as a property interest in specific funds. Assuming Appellant has a right to be paid by Appellee, that payment may come from personal funds, loan funds, or from some other source. Nothing in the promise to be paid as alleged by Appellant establishes his ownership interest in or right to a specific loan draw.

{¶33} To support his conversion claim, Appellant must demonstrate "the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Jones, supra*, at 96. The facts as Appellant alleges in his amended complaint do not demonstrate his ability to make this claim. Appellant may have pleaded the elements of a fraudulent conversion claim that could be properly enforced by the bank – if indeed the owner misrepresented to the bank that all subcontractors including Appellant had been paid for work completed to date, the bank released additional funds on that representation, and the bank sought to have the funds returned upon learning the representation was false, but they were withheld – however, this is not a conversion claim that Appellant can make on his own behalf. Appellant must have some particularized right to the specific funds, beyond a general right to be paid by a party who may receive the funds, in order to state a claim for fraudulent conversion. Appellant has failed to state a cause of action for fraudulent conversion. Even if the rationale used by the court was incorrect, the trial court's decision to dismiss the claim was correct. Appellant's fourth assignment of error is overruled. The trial court's judgment is affirmed.

{¶34} In addition to dismissing Appellant's fraudulent conversion claim under R.C. 4113.61, the trial court also relied on this section to dismiss his other claims. The court cited the Prompt Payment Act as a secondary rationale for dismissing Appellant's claims for promissory estoppel and fraud. As discussed earlier when evaluating Appellant's claims for relief under his first and third assignments of error, Appellant has adequately pleaded the elements of promissory estoppel and fraud.

Nothing in R.C. 4113.61 bars common law prayers for relief or otherwise restricts Appellant's ability to file suit against the owner of the project. To the extent that the trial court's dismissal of Appellant's promissory estoppel and fraud claims was based on R.C. 4113.61, they are reversed.

{¶35} Turning to Appellant's unjust enrichment claim, the elements of unjust enrichment are "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment ('unjust enrichment')." *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984).

{¶36} Appellant alleged that he was a subcontractor hired to complete curbing, sidewalks, footers, floors, and a trash enclosure as well as additional concrete and excavation work on a commercial property, 789 Wick Ave., Youngstown, OH, owned by Appellee. According to Appellant, Appellee was aware of the work he was doing and was aware that he had not been paid for the work. The completed concrete work remains on the 789 Wick Ave. property. Appellant has alleged the elements of unjust enrichment: a benefit has been conferred on Appellee, Appellant has not been compensated for providing this benefit and Appellee retains the benefit. It appears from the allegations in the amended complaint that it would be unjust for Appellant to remain uncompensated.

{¶37} Appellee concedes that R.C. 4113.61 is not a bar to Appellant's common law causes of action, but instead argues that Appellant's claims are defective because there is no duty to pay between an owner and subcontractor.

Appellee contends that it would instead be unjust to allow Appellant to recover against Appellee because, according to Appellee, Appellant may have obtained a judgment against the general contractor and may have filed a defective mechanic's lien against the property. Both the possibility that a prior judgment against the general contractor exists and a mechanic's lien was already filed, defective or otherwise, are outside the scope of what the courts are allowed to consider when evaluating a Civ.R. 12(B)(6) motion. Assuming the existence of a judgment and/or lien, these may be relevant to the nature and amount of damages suffered by Appellant, but do not impact the existence of his various claims for relief. These allegations do not alter the fact that Appellant has stated several causes of action against Appellee that survive a Civ.R. 12(B)(6) motion to dismiss. The existence of a separate judgment does not alter Appellant's ability to make an unjust enrichment claim so long as he remains unpaid for any portion of the work performed and Appellee retains the benefit of that work.

{¶38} Appellant's fifth assignment of error as to unjust enrichment, promissory estoppel, and fraud is well-taken. The trial court's dismissal of these common law claims pursuant to R.C. 4113.61 is reversed. However, Appellant's fourth assignment of error is overruled and Appellant has failed to state a claim on which relief can be granted for conversion. The trial court's dismissal of Appellant's fourth cause of action for fraudulent conversion is affirmed.

## Conclusion

{¶39} Appellant has properly raised three causes of action against Appellee. The allegations in the amended complaint comply with the applicable pleading

requirements of Civ.R. 8 and Civ.R. 9 for promissory estoppel, unjust enrichment, and fraud. Appellant's promissory estoppel claim for damages and his unjust enrichment claims exist outside the statute of frauds and are not barred by the statute. With regard to his fraud claims, Appellant has alleged the elements necessary to excuse the writing requirement of the statute of frauds. To the extent that the trial court relied on R.C. 4113.61 to dismiss Appellant's claim, with the exception of his conversion claim the ruling is reversed.

**{¶40}** The underlying merits of Appellant's claims are not before us at this time. Although the allegations in Appellant's amended complaint are sufficient to establish various causes of action, whether, in fact, an enforceable promise was made, or whether Appellant is entitled to damages due to promissory estoppel or unjust enrichment, or both, is a matter for the trial court after further proceedings in compliance with our ruling and the Ohio Supreme Court's decision in *Olympic Holding Co., L.L.C. v. ACE Ltd.*, 122 Ohio St.3d 89, 2009-Ohio-2057, 909 N.E.2d 93 and *Wilson Floors v. Sciota Park, Ltd.*, 54 Ohio St.2d 451, 377 N.E.2d 514 (1978). The trial court's dismissals of Appellant's promissory estoppel, unjust enrichment, and fraud claims are reversed. The trial court's dismissal of Appellant's conversion claim is affirmed and the matter is remanded for further proceedings.

Vukovich, J., concurs.

DeGenaro, P.J., concurs.