[Cite as *Centennial Plaza III Invest., L.L.C. v. Centennial Plaza I Invest., L.L.C.*, 2016-Ohio-273.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| CENTENNIAL PLAZA III INVESTMENT, L.L.C., | : | APPEAL NO. C-150257 TRIAL NO. A-1404165 |
| | : | |
| Plaintiff-Appellant, | | |
| | : | *O P I N I O N.* |
| vs. | : | |
| CENTENNIAL PLAZA I INVESTMENT, L.L.C., | : | |
| | : | |
| Defendant-Appellee. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed from is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  January 27, 2016

*Barron, Peck, Bennie & Schlemmer Co., L.P.A.*, and *Steven C. Davis,* for Plaintiff-Appellant,

*Thompson Hine LLP, Robert P. Johnson* and *Ellen Melville*, for Defendant-Appellee.

Please note:  this case has been removed from the accelerated calendar.

**CUNNINGHAM, Presiding Judge.**

{¶1} Plaintiff-appellant Centennial Plaza III Investment, L.L.C., ("Plaza III") appeals from the judgment of the Hamilton County Court of Common Pleas dismissing its amended complaint against defendant-appellee Centennial Plaza I Investment, L.L.C., ("Plaza I") for the failure to state a claim. Plaza III sued Plaza I for, among other things, breach of contract and promissory estoppel. Because we hold that Plaza III stated a claim for promissory estoppel, we reverse the trial court's judgment and remand the cause for further proceedings.

## I. Background Facts and Procedure

{¶2} As alleged in the complaint, Centennial Plaza is a development located in the downtown area of Cincinnati, Ohio. The development includes five parcels of property, the three largest of which we refer to as Centennial I, Centenntial II, and Centennial III. Each of these three parcels contains a multistory office tower. Parking is provided in surface lots on the plaza and in a single garage located underneath the plaza and towers. The legal boundary line of Centennial I surrounds approximately three times as many parking spaces as Centennial III, but Centennial III has approximately two times the amount of rentable area in the office tower as Centennial I.

{¶3} All of the Centennial Plaza parcels are subject to the "Declaration of Covenants, Conditions, and Restrictions, and Reservation of Easements for Centennial Plaza" ("Declaration"). This Declaration was first executed and recorded in 1985 by the developer, and provides that "the Property shall be leased, held, sold, owned and conveyed subject to certain easements, conditions, restrictions, covenants

and reciprocal rights for the benefit of all owners and ground lessees of the Property."

{¶4} As stated in the Declaration, each owner has rights of use and enjoyment in the garage and Centennial Plaza facilities, but these rights are subject to some restrictions. Of importance here, those rights shall be subject to "[t]he right of the separate Owners to park and designate parking areas in their separate parts of the Garage and any parking area located on the surface of the Property, so long as the free flow of vehicular and pedestrian traffic to and from the Garage and entrance and exit ramps and doorways is not impeded."

{¶5} The Declaration specifically provides for the amendment or termination of its provisions, but only "by a recorded instrument executed by and approved by the Owners of all Parcels." The Declaration was amended in 1995 by the successors in interest, including the city of Cincinnati, which became the successor in interest to the Centennial II parcel in 1992. Although the Declaration was amended in 1995, the provisions at issue in this case were not altered.

{¶6} In 1999, Centennial I and Centennial III were transferred to New Boston Centennial, L.L.C., ("New Boston") and that entity entered into various leases that contractually assigned 32 spaces in the garage to tenants in the Centennial III tower, notwithstanding that some of those spaces were outside of the boundary line of the Centennial III parcel and in the boundary line of the Centennial I parcel.

{¶7} New Boston decided to sell the parcels Centennial I and III in an on-line auction which imposed strict guidelines and deadlines. One guideline required the transfer of the two parcels as a single plot of real estate to the highest and best bidder in an auction process to be conducted on November 27, 2012.

3

{¶8}   Plaza III learned of the auction, but was primarily interested in acquiring only Centennial III.   While Plaza III was considering its options with respect to the two parcels, Plaza I "entered the picture" and contacted Plaza III with a proposal.   Plaza I proposed that Plaza III acquire both parcels in the auction and simultaneously transfer Centennial I to Plaza I.   Concerns arose over how Plaza III and Plaza I would allocate and apportion parking spaces.   Both parties were aware that the Centennial III parcel had insufficient parking for the current tenants, and no additional parking for any new office tower tenants that Plaza III could attract to the then half-occupied tower.

{¶9}   According to the allegations, Plaza III and Plaza I agreed to a real-property easement that provided for the parking needs of Plaza III,  and agreed to memorialize the agreement in a written "supplement" to the Declaration that would be recorded.   Plaza III then tendered to Plaza I a document captioned as a "supplement" to the Declaration and containing the easement agreement as well as other terms.   Plaza I responded to Plaza III with its own supplement that allegedly contained the same easement agreement and a map depicting the agreed-upon-modified parking plan.   Neither document was signed or recorded.

{¶10} Following this exchange of documents, and allegedly "in reliance" upon the agreements, Plaza III acquired Centennial III and Plaza I simultaneously acquired Centennial I.   Several months after the closing, Plaza I threatened to tow the vehicles of Centennial III office tower tenants, occupants, and guests who parked in spaces that were the subject of the parking agreement between Plaza III and Plaza I. Plaza III then rented offsite parking spaces to accommodate the parking needs for those using the Centennial III office tower, and filed this lawsuit against Plaza I.

{¶11}   The original complaint set forth seven claims for relief.  After Plaza I moved for a more definite statement, Plaza III amended and shortened the complaint and attached to it the original Declaration, the amended Declaration, and the two documents captioned as supplements to the Declaration.  Plaza III alleged breach of an express contract, estoppel by easement, promissory estoppel, and fraud.

{¶12}   Plaza I then moved to dismiss the entire complaint for failure to state a claim upon which relief could be granted.  *See* Civ.R. 12(B)(6).  Of relevance to this appeal, Plaza I argued that Plaza III could not prevail on its breach-of-contract claim because the documents it relied upon to establish the easement did not satisfy the statute of frauds.  Plaza I also contended that the claim for promissory estoppel failed, because the oral promise contradicted the Declaration and Plaza III could not have reasonably relied upon that oral promise.

{¶13}   The trial court granted the motion and dismissed the complaint.  This appeal followed.  Plaza III's sole assignment of error alleges that the trial court erred by dismissing its complaint.

{¶14}   Plaza III advances two arguments on appeal.  First, it submits that it stated a claim for breach of contract because the exchanged documents satisfied the statute of frauds.  Second, it argues that an action for reliance damages under a promissory-estoppel theory exists under the facts of the case even if it is determined that the statute of frauds bars its breach-of-contract claim.

## II. Standard of Review

{¶15}   A motion to dismiss for failure to state a claim upon which relief can be granted tests only the legal sufficiency of the complaint.  *State ex rel. Hanson v. Guernsey Cty. Bd. Of Commrs.*, 65 Ohio St.3d 545, 548, 605 N.E.2d 378 (1992).  For a court to dismiss on this basis, "it must appear beyond a doubt from the complaint

5

that the plaintiff can prove no set of facts entitling him to recovery." *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus. Importantly, the court must accept the factual allegations contained in the complaint as true, and draw all reasonable inferences from these facts in favor of the plaintiff. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). This court applies a de novo standard of review to the trial court's dismissal of a complaint under Civ.R. 12(B)(6). *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5.

### III. Breach of Contract

{¶16} Plaza III argues the complaint alleged a set of facts that would support a claim for breach of contract. The contract allegedly arose from an exchange of documents between the parties that contained the substantial agreement on the material terms of a real-property easement, and Plaza III contends the contract satisfied the statute of frauds.

{¶17} An easement is an interest in land that is subject to the requirements of the statute of frauds. *See St. Michaels Russian Orthodox Greek Catholic Church v. Clark*, 37 Ohio App. 200, 203, 174 N.E. 607 (8th Dist.1930), cited by *Ottawa Cty. Commrs. v. Mitchell*, 17 Ohio App.3d 208, 212, 478 N.E.2d 1024 (6th Dist.1984). Pursuant to the statute of frauds, an estate or interest in lands cannot be granted except by deed or written note *signed* by the party granting it or his lawfully authorized agent. *See* R.C. 1335.04 and 1335.05.

{¶18} Under certain circumstances, several writings may be construed together when determining if the requisites of the statute of frauds have been met. *Pulver v. Rookwood Highland Tower Invests.*, 1st Dist. Hamilton Nos. C-950361 and C-950492, 1997 Ohio App. LEXIS 1153, *11-12 (Mar. 26, 1997), citing *Thayer v.*

*Luce*, 22 Ohio St. 62 (1871), paragraphs one and two of the syllabus. But, at a minimum, one writing must be signed. *Id.*

{¶19} Under Ohio law, "agreements that do not comply with the statute of frauds are unenforceable." *Olympic Holding Co., L.L.C. v. ACE Ltd.*, 122 Ohio St.3d 89, 2009-Ohio-2057, 909 N.E.2d 93, ¶ 32. In addition, "[t]he breach of an oral promise to sign an agreement does not remove the agreement from the signing requirement of the statute of frauds." *Id.* at paragraph one of the syllabus. This is true "even when the promise to execute is fraudulent or misleading." *Id.* at ¶ 36. Thus, in this case, due to the statute of frauds, the exchange of unsigned documents could not create an enforceable contract creating an easement, even if the promise to execute an agreement was fraudulent or misleading.

{¶20} Plaza III's suggestion that a signature was not required, based on *L & M of Stark Cty., Ltd. v. Lodana's Footwear, Inc.*, 5th Dist. Stark No. 2006 CA 00091, 2006-Ohio-5997, is not persuasive. That case involved the admission of parol evidence to clarify an ambiguous term in an executed lease. *Id.* at ¶ 66-67. Here, the issue is the enforceability of an unexecuted agreement.

{¶21} Because the alleged conveyance did not comport with the statute of frauds, the complaint fails to state a claim for relief for breach of an express contract.

### IV. Promissory Estoppel

{¶22} Next, Plaza III argues that it alleged facts sufficient to state a claim for reliance damages under a claim of promissory estoppel. Ohio has adopted the theory of promissory estoppel as ratified by the American Law Institute in the Restatement of the Law 2d, Contracts, Section 90 (1973). *See Olympic Holding*, 122 Ohio St.3d 89, 2009-Ohio-2057, 909 N.E.2d 93, at ¶ 39, citing *Talley v. Teamsters, Chauffers, Warehousemen, & Helpers, Local No. 377*, 48 Ohio St.2d 142, 146, 357 N.E.2d 44

7

(1976); *The Ltd. Stores, Inc. v. Pan Am. World Airways, Inc.*, 65 Ohio St.3d 66, 73, 600 N.E.2d 1027 (1992); *Quantum Constr. Co. v. Metro Mechanicals, Inc.*, 1st Dist. Hamilton No. C-850207, 1986 Ohio App. LEXIS 6243 (Apr. 2, 1986).

{¶23}   To recover on a claim of promissory estoppel, one must prove 1) the offending party made a promise; 2) the promissor reasonably should have expected the promisee to rely on the promise; 3) the promisee did rely on the promise to his detriment; and 4) "injustice can be avoided only by enforcement of the promise." Restatement of Law 2d, Contracts, Section 90 (1981).

{¶24}   In addition to the Restatement elements, under the Ohio view of the claim, the claimant must also establish that the reliance was reasonable, meaning that the party claiming estoppel could not have known, and in fact did not know, that the other party's conduct was misleading.   *See Olympic Holding* at ¶ 39, citing *Shampton v. Springboro*, 98 Ohio St.3d 457, 2003-Ohio-1913, 786 N.E.2d 883, ¶ 34; *SST Bearing Corp. v. Geheb Elec. & Indus. Supply Co.*, 1st Dist. Hamilton No. C-050093, 2005-Ohio-6820, ¶ 9.   *Compare* Restatement of the Law 2d, Contracts, Section 90, Comment b (1981).

{¶25} The statute of frauds does not bar a promissory-estoppel claim for detrimental reliance.  *See Olympic Holding*, 122 Ohio St.3d 89, 2009-Ohio-2057, 909 N.E.2d 93, at ¶ 36; *Filo v. Liberato*, 2013-Ohio-1014, 987 N.E.2d 707, ¶ 10 (7th Dist.); *Quantum*, 1st Dist. Hamilton No. C-850207, 1986 Ohio App. LEXIS 6243, at *3-4 (Apr. 2, 1986).  Specifically, the Ohio Supreme Court has stated that promissory estoppel remains an equitable remedy to recover reliance damages based on a defendant's "unfulfilled or fraudulent" oral promise even though the promise was not memorialized in conformance with the statute of frauds.  *See Olympic Holding* at ¶

36, 39, 40; *Filo* at ¶ 10; *Heinz & Assocs. v. Diamond Cellar Holdings, LLC*, 10th Dist. Franklin No. 11AP-688, 2012-Ohio-1422, ¶ 17.

{¶26} This court has recognized promissory estoppel as a separate cause of action, despite noncompliance with the statute of frauds, when there has been "(1) a misrepresentation that the statute of frauds requirements had been complied with, or (2) a promise to make a memorandum of the agreement." *Roth v. Natl. City Bank*, 1st Dist. Hamilton No. C-100216, 2010-Ohio-5812, ¶ 15.

{¶27} According to the allegations, Plaza I agreed to allocate to Plaza III the parking spaces it requested as an easement and misrepresented its willingness to execute and record the easement, and Plaza III reasonably, foreseeably, and detrimentally relied upon the false representations of Plaza I when it purchased Centennial III without sufficient parking, causing reliance damages. Such allegations, if true, present a possible claim for relief.

{¶28} Plaza I maintains that the promissory-estoppel claim failed because Plaza III's reliance on the alleged oral promise was unreasonable as a matter of law. Typically, the question of whether reliance on a promise was reasonable is a question of fact to be resolved by the fact finder. *See Kelly v. Georgia-Pacific Corp.*, 46 Ohio St.3d 134, 139, 545 N.E.2d 1244 (1989), citing *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 105, 483 N.E.2d 150 (1985).

{¶29} Although the reasonableness of the reliance is typically an issue of fact, the Supreme Court in *Olympic Holding* stated that it is unreasonable as a matter of law for a party to rely on a statement of future intent in "complex business transactions," especially when the negotiations involve two sophisticated business entities. (Internal quotations omitted.) *Olympic Holding,* 122 Ohio St.3d 89, 2009-Ohio-2057, 909 N.E.2d 93, at ¶ 37. But the court made this statement only when

explaining its refusal to allow the use of promissory estoppel to defeat a statute-of-frauds defense in a breach-of-contract action. At the same time, the court sanctioned the use of a promissory-estoppel cause of action to obtain reliance damages for a party that relied on an oral promise that was unenforceable because it did not comply with the statute of frauds requirements that it be in writing and signed by the party to be charged. *Id.* at ¶ 38.

{¶30} One explanation for this arguable inconsistency is that the interest to be protected by the statute of frauds is not as significant when only reliance damages are sought and not the specific performance of the promise. This is as true for the promise to execute the proposed five-year-joint-venture agreement at issue in *Olympic Holding* as it is for the promised easement at issue in this case. The promissory-estoppel cause of action provides a remedy for an injustice that can take place during negotiations when a party, as alleged, resorts to fraud or false representations. *See id.* at ¶ 36.

{¶31} Here, consistent with the statements in *Olympic Holding*, Plaza III is using the doctrine of promissory estoppel as a separate cause of action to obtain reliance damages for Plaza I's alleged breach of its oral promise; Plaza III is not seeking enforcement of the oral agreement.

{¶32} And, according to the allegations, Plaza I not only agreed to the easement, but also misrepresented that it would sign and record that agreement. These facts distinguish this case from those cited by Plaza I in which courts found reliance unreasonable as a matter of law because the parties clearly had intended to be bound only by a final memorialization of their negotiations. *See Heinz & Assocs.,* 10th Dist. Franklin No. 11AP-688, 2012-Ohio-1422, at ¶ 43; *Seaman v. Mae*, 8th Dist. Cuyahoga No. 92751, 2009-Ohio-4030, ¶ 16-17; *Mansfield Square, Ltd. v. Big*

*Lots*, 10th Dist. Franklin No. 08AP-387, 2008-Ohio-6422, ¶ 20; *Carcorp, Inc. v. Chesrown Oldsmobile-GMC Truck, Inc.*, 10th Dist. Franklin No. 06AP-329, 2007-Ohio-380, ¶ 20.

{¶33} The case is still in the pleading stages, and this court "must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party." *Mitchell,* 40 Ohio St.3d at 192, 532 N.E.2d 752. Under these circumstances, we decline to hold that Plaza III's reliance was unreasonable as a matter of law.

{¶34} Plaza I also argues that a party may not maintain a claim for promissory estoppel when a written instrument contradicts the alleged promise. In support, Plaza I cites *Kahler v. Cincinnati Inc.*, 1st Dist. Hamilton No. C-140407, 2015-Ohio-979, ¶ 20. In *Kahler*, this court recognized that promissory estoppel is not an available remedy when the "parties enter into an enforceable written contract 'and merely dispute its terms, scope, or effect.' " *Kahler* at ¶ 20, quoting *Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.*, 96 F.3d 174, 181 (6th Cir.1996). *See Woods v. Capital Univ.*, 10th Dist. Franklin No. 09AP-166, 2009-Ohio-5672 (prohibiting a promissory-estoppel claim based on a precontract promise where there is a subsequent written contract).

{¶35} But here the parties did not negotiate and execute the Declaration. As we have already held, there is no enforceable contract negotiated between the parties concerning the allegedly promised easement. Therefore, *Kahler* does not apply.

{¶36} Ultimately, Plaza III alleged sufficient facts to pursue an action for reliance damages under a promissory-estoppel theory. Therefore, the trial court erred by dismissing the complaint. Accordingly, we sustain the assignment of error in part and overrule it in part.

## V. Conclusion

{¶37} The judgment of the trial court granting Plaza I's motion to dismiss the promissory-estoppel claim is reversed, and this cause is remanded for further proceedings consistent with the law and this opinion. The trial court's judgment is affirmed in all other respects.

Judgment affirmed in part, reversed in part, and cause remanded.

**FISCHER** and **STAUTBERG, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.