**TECHNOGRAPHICS, INC., Plaintiff,**

v.

**MERCER CORPORATION, Defendant.**

No. 3:CV–89–0937.

United States District Court, M.D. Pennsylvania.

Nov. 19, 1991.

Joseph A. O'Brien, Oliver, Price & Rhodes, Scranton, Pa., for plaintiff.

James M. Scanlon, Scanlon, Howley, Scanlon & Doherty, Scranton, Pa., for defendant.

## MEMORANDUM

McCLURE, District Judge.

## BACKGROUND

Plaintiff Technographics, Inc. filed this action on June 19, 1989, alleging that defendant Mercer Corporation ("Mercer") sold a defective coating machine to it in October of 1987. Technographics contends that the machine was negligently designed and manufactured, and that the sale of the machine violated the implied warranties of fitness of purpose and merchantability. Technographics maintains that the defendant is liable to it for consequential and incidental damages resulting from its purchase of the allegedly defective coating machine from defendant.

Mercer does not dispute that the machine failed to function properly after being installed. In fact, after several unsuccessful attempts to repair the machine, plaintiff returned the machine to the defendant and defendant refunded the purchase price to plaintiff.

On June 28, 1991, Mercer filed a motion for summary judgment along with a supporting brief and a statement of undisputed material facts. Mercer also submitted, with exhibits, the depositions of the following individuals: Donald R. Mercer, founder and president of Mercer; Scott Allan Mercer; vice president of sales for Mercer; James P. Thomas, former district sales manager for Mercer; William T. Williams, plant supervisor for Fitchburg CPI, a subsidiary of Technographics, and Ronald B. Smith, purchasing agent for Technographics.

Believing the motion to be unopposed, the court prematurely granted summary judgment in favor of Mercer. However, in compliance with a court-ordered extension, Technographics filed a brief in opposition to the motion on July 29, 1991. Accordingly, the court vacated the order granting summary judgment, and will now consider the merits of the motion.

## STANDARD OF REVIEW

■ Summary judgment is appropriate only when there is no genuine issue of material fact to be resolved. Fed.R.Civ.P. 56. All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. The entire record must be examined in a light most favorable to the non-moving party. *Continental Insurance v. Bodie*, 682 F.2d 436, 438 (3d Cir.1982). If there is no genuine issue of material fact, summary judgment may be granted to the party entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c).

■ Since a motion for summary judgment is designed to go beyond the pleadings, factual specificity is required of a party who opposes such a motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986). Accordingly, in order to defeat a properly supported motion for summary judgment, a party may not merely restate the allegations of his complaint. *Farmer v. Carlson*, 685 F.Supp. 1335, 1339 (M.D.Pa.1988). Nor can a party rely on self-serving conclusions, unsupported by specific facts in the record. *Celotex Corp. v. Catrett*, supra, 477 U.S. at 322–23, 106 S.Ct. at 2552–53, 91 L.Ed.2d at 273. A non-moving party must point to concrete evidence in the record which supports each essential element of his case. *Id.* If the party fails to provide such evidence, then he is not entitled to a trial and the moving-party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(e).

## DISCUSSION

In the instant case, there is no dispute as to the material facts. The central question before the court is whether the agreement between the parties for the purchase of the coating machine was governed by the terms of Mercer's original quotation or by the terms of Technographics' subsequent purchase order. As in many cases dealing with the sale of goods, and consequently the Uniform Commercial Code ("U.C.C."), both the original quotation and the purchase order contain a plethora of boiler plate language intended to protect the parties in the event of a dispute. Also, as in many cases dealing with the U.C.C., the language contained in each form is essentially contradictory.

Mercer's original quotation specifically negates implied warranties of purpose and merchantability and claims for consequential damages. It also provides that the terms of the quotation may only be altered by a written instrument signed by an officer of the Mercer Corporation. Contrastingly, Technographics' subsequent purchase order creates implied warranties of purpose and merchantability and does not negate consequential damages.

Mercer contends that the agreement between the parties is governed by the terms of the original quotation. It argues that under the U.C.C. the additional and different terms of the subsequent purchase order never became part of the contract between the parties. See 13 Pa.C.S.A. § 2207 (subsequent additional terms are to be construed only as proposals for addition to the contract if: 1) the offer expressly limits acceptance to the terms of the offer; or 2) the additional terms material alter the contract); *Universal Plumbing and Piping Supply, Inc. v. John C. Grimberg Company, Inc.*, 596 F.Supp. 1383 (W.D.Pa.1984) (an arbitration provision on the back of a purchase order was an offer of an additional term and did not become part of the contract because the original offer expressly restricted acceptance to its terms and also because the additional term materially altered the contract). However, this would only be true if Technographics' actions following the receipt of Mercer's original quotation formed a contract between the parties. Unfortunately for Mercer, it took one too many steps in its efforts to protect its interests.

The original quotation, dated October 15, 1987, provides in part, "[i]t is understood and agreed that the contract between the Buyer and the Company was made in Hendersonville, Sumner County, Tennessee, upon acceptance by the Company, Mercer Corporation and by its properly authorized representatives." This is known as a home office acceptance clause. Such a clause precludes the formation of a contract except upon approval by the relevant home office. *West Penn Power Co. v. Bethlehem Steel Corp.*, 236 Pa.Super. 413, 426–27, 348 A.2d 144, 152 (1975). Thus, the inclusion of this home office acceptance clause was intended to and did, in fact, make it impossible for Technographics to create a binding contract by accepting Mercer's quotation. In addition, the inclusion of this clause converts what would have otherwise been an offer into a proposal or preliminary negotiation. *Id.* at 427 n. 7, 348 A.2d at 152 n. 7.

Since the quotation was not an offer, Technographics' subsequent purchase order constituted the first offer between the parties. *McCarty v. Verson Allsteel Press Co.*, 89 Ill.App.3d 498, 507, 44 Ill.Dec. 570, 577, 411 N.E.2d 936, 943 (1980) (since acceptance of a price quotation containing a home office acceptance clause cannot create an enforceable contract, the subsequent purchase order should be treated as the offer). Significantly, subsequent to its receipt of the purchase order and without notifying Technographics of any objection to the terms of the purchase order, Mercer designed, delivered and installed the coating machine. These actions constitute acceptance by Mercer of the terms contained in Technographics' purchase order. 13 Pa. C.S.A. § 2207(c). Accordingly, the terms, including all waivers and disclaimers, contained in Mercer's original quotation have no legal effect on the aforementioned transaction.

Mercer contends further that under Pennsylvania law Technographics is not entitled to recover lost profits as part of its claimed consequential damages. Mercer maintains that Pennsylvania law precludes the recovery of lost profits for breach of warranty unless the goods were purchased for resale to the general public. However, this is a misstatement of Pennsylvania law. Although Pennsylvania law precludes recovery of loss of profits to a business because of customer dissatisfaction or loss of goodwill, it does not limit such recovery solely to cases involving goods purchased for resale. See, e.g. *Draft Systems, Inc. v. Rimar Manufacturing, Inc.*, 524 F.Supp. 1049 (E.D.Pa.1981) (goods provided to manufacturer were used in manufacturing process); *Frank B. Bozzo, Inc. v. Electric Weld Division*, 283 Pa.Super. 35, 423 A.2d 702 (1980) (steel mesh used in concrete paving on a highway); *R.I. Lampus Co. v. Neville Cement Products Corp.*, 474 Pa. 199, 378 A.2d 288 (1977) (cement blocks used in manufacture of structural planks). Recovery of lost profits will be permitted if such damages are proven with reasonable certainty. *National Controls Corp. v. National Semiconductor Corp.*, 833 F.2d 491 (3d Cir.1987) (buyer failed to prove that seller's breaches were proximate cause of alleged loss of profits on sale of telephones to third parties).

Finally, Mercer argues that Technographics' claims based on strict liability and negligence should be dismissed because Pennsylvania does not recognize recovery for economic loss under these theories. *Lower Lake Dock Company v. Messinger Bearing Corp.*, 395 Pa.Super. 456, 461–65, 577 A.2d 631, 634–36 (1990); *New York State Electric & Gas Corp. v. Westinghouse Electric Corp.*, 387 Pa.Super. 537, 550–51, 564 A.2d 919, 925–26 (1989); *REM Coal Co., Inc. v. Clark Equipment Co.*, 386 Pa.Super. 401, 563 A.2d 128 (1989). The court agrees and will grant summary judgment in favor of Mercer on these two claims.