**Wayne D. ALLEN, Plaintiff,**

v.

**FORD MOTOR COMPANY, Defendant.**

**No. 3:97CV7060.**

United States District Court,
N.D. Ohio,
Western Division.

June 12, 1998.

---

Frederick M. Luper, Jeffrey R. Jinkens, Kenneth M. Richards, Luper, Sheriff & Neidenthal, Columbus, OH, for Wayne D. Allen, plaintiff.

George W. Hairston, Elizabeth Anne McNellie, Randall S. Rabe, Baker & Hostetler, Columbus, OH, for Ford Motor Company, defendant.

## Order

CARR, District Judge.

In this breach of contract case, plaintiff claims that defendant breached an agreement to sell the stock of a Ford–Mercury dealership it owned. Because the parties are diverse and the amount in controversy exceeds $75,000, this Court has jurisdiction pursuant to 28 U.S.C. § 1332. Pending are plaintiff's motion for partial summary judgment (Doc. 18) and defendant's motion for summary judgment (Doc. 19).[1] For the following reasons, plaintiff's motion shall be denied and defendant's motion shall be granted.

### Background

In April and May, 1995, plaintiff and defendant entered negotiations for the purchase by plaintiff of defendant's stock in a Ford–Mercury dealership in Clyde, Ohio, Western Ford–Mercury, Inc. (Western). On June 9, 1995, plaintiff submitted a written offer to defendant to purchase the stock of Western. The second paragraph of that offer stated:

---

1. Defendant has also filed a motion for oral argument concerning the cross motions. (Doc. 32). Because I do not believe an oral hearing is necessary, and have instead decided the motions on the briefs, this motion shall be denied.

Purchaser in submitting this offer is completely cognizant of the fact that despite any participation, involvement or assistance which may have been provided by representatives of Ford in connection with its preparation, Ford shall have no obligation to Purchaser if the offer shall be declined and that only an officer of Ford has the authority to execute the proposed agreement on behalf of Ford.

(Doc. 18, ex. A at ex. 2). The offer also provided that it would expire if not accepted by Ford by June 23, 1995, the original closing date. (*Id.* at ¶ 8).

The proposed offer was never signed or executed by an officer of defendant. Keith Kenner, defendant's representative in the negotiations, however, initialed the first page of the offer. Plaintiff also claims that Kenner told him that his signature would be sufficient to bind Ford to the contract. (Pl. Aff. at ¶ 3).

During the next few weeks, both plaintiff and defendant undertook certain steps in preparation for the June 23 closing. Defendant, among other things, ordered an environmental assessment and completed environmental remediation, began to assess Western's closing net worth, and obtained insurance on plaintiff's behalf. Plaintiff, for his part, deposited $25,000 with defendant and began to manage the dealership.[2]

The June 23 closing date was rescheduled for early September, 1995, at the agreement of the parties, due to the discovery of environmental problems on the dealership's property. In late August, 1995, defendant learned that, because of a ruling from the Ohio Motor Vehicle Dealers Board,[3] it would not be able to issue a new franchise agreement to plaintiff for the Western dealership. The September closing therefore did not occur.

Plaintiff and defendant continued to discuss options for transfer of the Western stock. Defendant submitted two proposals to plaintiff, offering to execute a Hired General Manager Agreement with plaintiff on behalf of Western whereby plaintiff would receive a salary and a bonus equivalent to the net profits of the Western dealership until defendant was able to issue an unencumbered franchise to plaintiff. (Doc. 20, exs. I and J). Because defendant anticipated that it would not be able to execute the franchise agreement until March, 1996, however, the proposals were unsatisfactory to plaintiff. (Pl. Dep. at 72–73). Instead, plaintiff told defendant's representative that he would wait until December 31, 1995, to consummate the sale of the Western stock. (*Id.*). The sale never occurred, and plaintiff resigned from managing the Western dealership in January, 1996. (*Id.* 208–210).

Plaintiff filed this suit on January 22, 1997. His complaint asserts four separate causes of action: breach of contract, unjust enrichment, equitable and promissory estoppel, and fraud. Defendant moves for summary judgment on all claims; plaintiff moves for summary judgment on its breach of contract claim only.

### Discussion

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,"

---

**2.** Plaintiff managed the Western dealership under two Hired General Manager Contracts between June, 1995, and January, 1996, even though the sale of stock was never consummated.

**3.** My ruling that there was no binding contract between the parties makes it unnecessary to explain the somewhat complex factual scenario underlying the adverse ruling defendant received from the Board's Hearing Examiner. It is suffi-

cient to note that defendant, during its negotiations with plaintiff, was involved in a dispute with a prior manager of Western, Phil Lloyd. That dispute originally resulted in defendant's practical inability to transfer an unencumbered franchise to plaintiff. After an appeal of the Hearing Examiner's decision, however, the dispute and the status of the franchise were resolved.

which it believes demonstrate the absence·of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (*quoting* Fed.R.Civ.P. 56(e)).

### A. Breach of Contract

■ Plaintiff asks me to find, as a matter of law, that his written offer to defendant dated June 9, 1995, coupled with the statements of Kenner, defendant's representative, and defendant's actions in preparation for closing the sale of stock, constituted a valid, binding agreement between the parties, and that defendant's failure to close the transaction was a breach of that agreement. Defendant, on the other hand, argues that the June 9 writing was nothing more than a written offer, and, as it was never signed by an officer of defendant, never matured into a binding contract. In light of basic principles of contract law, I agree with defendant that no breach of contract claim can be maintained in this case.

■ A contract may be effective even though the written instrument evidencing its terms has not been executed. Ohio Jur.3d § 82 (1980). Indeed, "[s]ignature spaces in the form contract do not in and of themselves require that signatures of the parties are a condition precedent to the agreement's enforceability." *Richard A. Berjian, D.O., Inc. v. Ohio Bell Tel. Co.*, 54 Ohio St.2d 147, 151–152, 375 N.E.2d 410 (1978). Where, however, the parties have agreed that a contract shall not be binding until signed by a particular person, party, or official, courts will give effect to that agreement, and thus will not enforce the contract without the requisite signatures. *Id. See also Hamilton Foundry & Mach. Co. v. International Molders & Foundry Workers Union*, 193 F.2d 209, 213 (6th Cir.1951) (an unsigned contract cannot be enforced by either of the parties, however completely it may express their mutual agreement, if it was also agreed that the contract should not be binding until signed by both of them). *Accord* Am Jur.2d § 185 (1991) ("in the absence of a statute requiring a signature or *an agreement that the contract shall not be binding until it is signed,* parties may become bound by the terms of a contract, even though they do not sign it, where their assent is otherwise indicated, such as by the acceptance of benefits under the contract, or the acceptance by one of the performance by the other").

Other courts are in accord. *See, e.g., Neff v. World Pub. Co.*, 349 F.2d 235, 251 (8th Cir.1965) (where offer specifically stated that "signing of the acceptance at the end of this proposal shall constitute this proposal as a binding contract on all parties," rule that assent to an unsigned contract may be shown by delivering the contract or acting under it did not apply); *Technographics, Inc. v. Mercer Corp.*, 777 F.Supp. 1214, 1216 (M.D.Pa. 1991) (because home office acceptance clause precludes the formation of a contract except upon approval of the relevant home office, no contract had formed between the parties); *Knight v. Brodnax*, 1994 WL 51635, *3–4 (D.Mass. Jan.31, 1994) (summary judgment appropriate where it was clear that both parties intended to have a written, fully executed agreement in place before any contract came into existence between them); *Lorimar Distrib., Inc. v. Metrowest Corp.*, 1989 WL 81815, *3–4 (N.D.Ill. July 11, 1989) (where proposed agreement provided that it was not binding unless and until signed by an officer, failure of the parties to have signed and accepted the agreement precluded plaintiff from claiming that the parties' acts ratified the agreement); *Green v. Northeast Motor Co.*, 166 A.2d 923, 924 (D.C.1961) (standard warranty did not bind seller where the instrument by its own terms was declared to be invalid unless signed by the contracting parties and a witness and it was never signed); *O'Daniel Motors v. Handy*, 390 S.W.2d 453, 454 (Ky.1965) (purchase order signed by customer was not binding on dealer where order stated that it was not binding until accepted by dealer and approved by his credit department and dealer never signed the agreement); *Scutti Pontiac, Inc. v. Rund*, 92 Misc.2d 881, 402 N.Y.S.2d 144, 148 (1978) (agreement clearly stating that it "is not valid unless signed and accepted by dealer" did not become a binding contract of sale

between buyer and seller where seller never signed the agreement); *Antonucci v. Stevens Dodge, Inc.*, 73 Misc.2d 173, 340 N.Y.S.2d 979, 982–983 (Civ.Ct.1973) (because agreement stated "this order shall not become binding until accepted by dealer or his authorized representative," order and delivery of pickup truck was insufficient to constitute acceptance under the terms of the agreement); *West Penn Power Co. v. Bethlehem Steel Corp.*, 236 Pa.Super. 413, 348 A.2d 144, 152 (1975) (acceptance clause stating that proposal "shall become a contract upon, but no before, acceptance by the Home Office of our company" was valid for purpose of ensuring that negotiating agent had no power to bind the principal and that principal could accept or reject the offer at his pleasure).

The June 9 offer unambiguously stated that plaintiff was aware that no one but an officer of defendant had the authority to bind defendant. Therefore, the parties clearly contemplated that the signature of a Ford officer was a prerequisite to the formation of a valid contract between them.

Plaintiff argues, however, that statements made and actions taken by defendant's agents effectively waived the requirement that an officer execute the agreement. He first argues that Kenner's initialing of the offer and his assurance that this was sufficient to bind defendant created a valid contract between the parties, despite the lack of approval by a Ford officer. In light of the offer's unambiguous requirement that it be accepted by a Ford officer and its signature line requiring the signature of Ford's Assistant Secretary, however, Kenner's actions are insufficient to create an issue of fact as to whether the contract was binding. *Cf. Bailey v. Midwestern Enter., Inc.*, 103 Ohio App.3d 181, 186, 658 N.E.2d 1120 (1995) (where disclaimer clearly stated that contract was not binding until signed by authorized representative and signature line was blank, trial court did not err in finding that sales

representative did not have apparent authority to accept contract). Put simply, Kenner's actions could not reasonably be relied on as a waiver by Ford of its right to accept the offer only upon approval of one of its officers.

Plaintiff also asserts that Ford's actions in investigating environmental issues, assessing Western's net worth, etc., demonstrated its approval of the contract and its willingness to waive the requirement that an officer execute the offer before formation of a binding contract. Where the signature of one of the parties is a condition precedent to a binding contract, that condition may be waived by performance under the contract, as such performance indicates that the contract has been accepted. *See Dearborn Industrial Mfg. Co., Ltd. v. Soudronic Finanz AG*, 1996 WL 467245, *3 (N.D.Ill. Aug.13, 1996) (defendant waived provision requiring signature of an officer when it began to accept confidential information under a "Know–How" Agreement); *H.J. v. Int'l Tel. & Tel. Corp.*, 867 F.2d 1531, 1545–46 (8th Cir.1989) (provision that "agreement shall not be binding ... until signed by an officer" was waived where for ten months party "acted under the terms of the contract as if it were in effect").

Here, defendant did not begin performance under the alleged contract: the actions it took were preparatory measures that needed to be done before the anticipated closing date, and did not evidence an intent to be bound before that date. Even viewed most favorably to plaintiff, defendant's preparatory acts cannot be said to have constituted a waiver of the protection afforded it in the offer, as they were completely consistent with an intent to delay formation of a binding contract until execution of the offer by an officer.[4]

Because none of the statements made or actions taken by Ford's employees can reasonably be viewed as indicating that defen-

---

4. Plaintiff argues also that, on two separate occasions, defendant's agents conceded that the parties had a valid, binding contract for sale of Western's stock. This argument is misplaced for two reasons. First, the statements do not evidence defendant's intent to waive the offer's requirement of officer approval, as they occurred months after plaintiff resigned and abandoned

negotiations with defendant. Second, the post hoc belief of defendant's agents that a contract had existed between the parties does not make it so: the clear wording of the offer, the failure of an officer to execute the offer, and the lack of evidence to support the contention that the condition was waived compel a finding that no binding agreement existed between the parties.

dant had waived the unambiguous terms of the offer, plaintiff has failed to demonstrate a genuine issue of fact on which a jury could find that the offer ripened into a binding contract.

### B.  Unjust Enrichment

■ In Count II of his complaint, plaintiff claims that defendant was unjustly enriched by plaintiff's profitable management of the Western dealership between June, 1995, and January, 1996.

■ An unjust enrichment claim is cognizable where one confers benefit on another, in reliance on the existence of a promise to pay, without receiving just compensation for those services. *Weiper v. W.A. Hill & Assoc.*, 104 Ohio App.3d 250, 261–262, 661 N.E.2d 796 (1995) (*citing Aultman Hosp. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 55, 544 N.E.2d 920 (1989)).  To prevail on such a claim, therefore, a plaintiff must demonstrate that his actions conferred a benefit on the defendant.

Plaintiff does not dispute that he was paid a salary and given all the profits of the Western dealership while he managed it.  In response to defendant's motion for summary judgment, he argues only that defendant was unjustly benefitted because the dealership's value increased during the time that plaintiff managed it, and defendant was able to recoup some of that increased value when it transferred some of the Western dealership's inventory, parts, and service records to a new Ford dealership in Fremont, Ohio. He does not, however, explain or substantiate his contention that this transfer resulted in an unfair benefit to Ford.

Because plaintiff has not set forth any specific evidence to support his unjust enrichment claim, as is his burden on a motion for summary judgment, defendant's motion as to this claim shall be granted.

### C.  Promissory Estoppel

■ Plaintiff's third claim is based on the equitable doctrine of promissory estoppel. Under this doctrine, one party is estopped from denying that a contract exists where that party has induced the reasonable reliance of another through unkept promises. Under Ohio law, "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *The Limited Stores, Inc. v. Pan Am. World Airways*, 65 Ohio St.3d 66, 73, 600 N.E.2d 1027 (1992) (*citing* Restatement (Second) of Contracts § 90 (1981)).

■ Plaintiff argues that defendant is estopped from denying the existence of a contract between them because he "relied upon the terms of the Purchase Agreement [5] and upon express representations by representatives of defendant that he would become the owner of the Dealership pursuant to the terms of the Purchase Agreement." (Doc. 26 at 21).  In light of my finding that no valid contract was formed between the parties, plaintiff's argument is misplaced: the explicit terms of the offer (what plaintiff refers to as the "Purchase Agreement") contradict plaintiff's claim that he specifically relied on it in assuming that there was a contract between the parties despite the lack of an officer's signature.  Additionally, the employees' representations that plaintiff would become the owner of the dealership under the terms of the offer cannot reasonably be interpreted as promises that defendant was bound by the contract.  Thus, plaintiff fails to specify any promises on which he based his belief that the contract was valid and binding on defendant.

Most fundamentally, it is difficult to understand how plaintiff can claim that he was reasonably induced to believe that there was a valid contract between the parties in the face of the clear, unambiguous written provision to the contrary.  Defendant's motion for summary judgment on this claim shall therefore be granted.

### D.  Fraud

■ Count IV of plaintiff's complaint alleges that defendant made false statements

---

**5.**  Plaintiff has uniformly referred to his June 9, 1995, offer as the "Purchase Agreement."  My holding that the offer never ripened into a valid contract makes this characterization incorrect.

about is ability and intention to complete the sale of Western stock. Plaintiff specifically claims that defendant falsely told him that the dispute with Phil Lloyd, Western's former manager, would not hinder the sale of stock to plaintiff.

■ To prevail on a claim of fraud, a plaintiff must demonstrate (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) that is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance. *Burr v. Bd. of Cty. Commrs. of Stark Cty.*, 23 Ohio St.3d 69, 491 N.E.2d 1101, paragraph 2 of the syllabus (1986).

Plaintiff's fraud claim cannot stand. He has presented no evidence that defendant knew that the Lloyd matter would become problematic, intentionally misled him by not informing him of the dispute, or caused him injury. Indeed, his fraud claim is simply not credible in light of the undisputed evidence that defendant believed the Lloyd dispute would be no impediment to the agreement with plaintiff, was shocked by the Hearing Officer's ruling, sought in good faith to renegotiate with plaintiff, and remained ready and willing to complete the stock sale once the problems with Lloyd were resolved. Defendant's actions are not those of a company seeking intentionally to mislead, but rather those of a company truly shocked by a contingency it did not foresee. As such, summary judgment is appropriate on the fraud claim.

### Conclusion

For the foregoing reasons, it is hereby

**ORDERED THAT**

(1) plaintiff's motion for partial summary judgment (Doc. 18) be, and same hereby is, denied; and

(2) defendant's motion for summary judgment (Doc. 19) be, and same hereby is, granted; and

(3) defendant's motion for oral argument (Doc. 32) be, and same hereby is, denied.

**So ordered.**