[Cite as *Estate of Battle-King v. Heartland of Twinsburg*, 2021-Ohio-2267.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| ESTATE OF MARY BATTLE-KING, | : | |
| Plaintiff-Appellee, | : | No. 110023 |
| v. | : | |
| HEARTLAND OF TWINSBURG, | : | |
| ET AL. | : | |
| Defendants-Appellants. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** July 1, 2021

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-20-931712

### *Appearances:*

Connick Law L.L.C., and Thomas Connick; and Dennis N. LoConti, *for appellee*.

Reminger Co., L.P.A., J Randall Engwert, and Adam M. Borgman, *for appellants*.

MARY J. BOYLE, A.J.:

{¶ 1} Defendant-appellant, Heartland of Twinsburg, a skilled nursing facility, appeals from the trial court's order denying its motion to stay pending arbitration in the case filed by plaintiff-appellee, the estate of Mary Battle-King,

deceased, brought by Ideanor Brooks, administrator of the estate.  Heartland raises one assignment of error for our review:

> The trial court erred in denying Defendant's Motion to Stay Pending Arbitration under R.C. 2711.02. * * *

{¶ 2}  Finding merit to Heartland's sole assignment of error, we reverse and remand for the trial court to hold an evidentiary hearing on the issue of whether Heartland forged Battle-King's signature on an arbitration agreement.

## I. Procedural History and Factual Background

{¶ 3}  In April 2020, the estate filed a complaint against Heartland and the Montefiore Home alleging negligence, recklessness, and wrongful death in its care and medical treatment of Battle-King while she was a patient at the facility.

{¶ 4}  Heartland sent a letter to the estate in May 2020, demanding that the matter be arbitrated and attaching a copy of the signed "Voluntary Arbitration Agreement" between Heartland and Battle-King.  The estate rejected Heartland's demand asserting that Heartland forged Battle-King's signature on the arbitration agreement.  Heartland did not respond.

{¶ 5}  On July 14, 2020, Heartland filed its motion to stay pending arbitration pursuant to R.C. 2711.02.  Heartland attached the arbitration agreement to its motion as well as an affidavit from its administrative coordinator, Jacque McKee.  McKee stated that her affidavit was based on personal knowledge and review of all records maintained in the ordinary course of business at Heartland.  McKee stated that she had been the admissions coordinator at Heartland since May

2018. She explained that one of her "key responsibilities [was] assisting prospective patients in reviewing and understanding the Admission Agreement, or contract and associated paperwork to ensure that the patient fully understands the terms and conditions of their admission." McKee averred that she "was personally involved in the admission" of Battle-King to Heartland on April 8, 2019. McKee said that she personally met with Battle-King to discuss the admission agreements and contracts. She averred that Battle-King signed the arbitration agreement in her presence on April 8, 2019. She further averred:

> 14. In accordance with established Heartland of Twinsburg policies and procedures, as well as my own pattern and practice, the Admissions Agreement, Patient Information Handbook, Voluntary Arbitration Agreement, and other relevant admission materials were read and fully explained to Mary Battle-King during her admissions meeting. Mary Battle-King was given the opportunity to ask questions and consult an attorney regarding all of the documents including the Voluntary Arbitration Agreement. Prior to signing, I also informed Mary Battle-King that the Voluntary Arbitration Agreement was not required in order to be admitted to Heartland of Twinsburg and that she should only sign if she is comfortable doing so.
>
> 15. On April 8, 2019, Mary Battle-King voluntarily signed the Voluntary Arbitration Agreement, as well as other relevant admissions materials, in my presence.
>
> 16. I personally observed Mary Battle-King sign each of the documents in Exhibits A and B where her signature is recorded.
>
> 17. As Admissions Coordinator, I would not have been permitted to accept—nor would I have accepted — signatures made by another on a patient's behalf without the patient's prior authorization and request.

{¶ 6} The estate opposed Heartland's motion, arguing that Battle-King's name was forged on the admission documents and were, therefore, the arbitration agreement was not enforceable. The estate further argued that the estate and

beneficiaries were not bound to arbitrate their wrongful death claims because they were not "signatories to the purported arbitration agreement." Finally, the estate argued that because Heartland did not execute the arbitration agreement and it only contained Battle-King's "forged signature," it is unenforceable as a matter of law. The "voluntary arbitration agreement" had blank lines for three signatures: (1) patient, (2) patient representative, and (3) center representative. Battle-King's purported signature is the only one on the agreement.

{¶ 7} The estate attached an affidavit of a "handwriting and forensic document examiner expert," Vickie Willard, who determined "to a reasonable degree of certainty, that, in her expert opinion, 'the evidence will support that the same Mary Battle-King whose signatures appear on the documents listed as items one through fourteen [the known specimens] did not sign the name "Mary Battle" on the disputed Arbitration Agreement (the disputed signature).'" Based upon Willard's report and its arguments, the estate requested the that the trial court deny Heartland's motion to stay and maintain jurisdiction over all of its claims.

{¶ 8} Heartland replied to the estate's opposition brief, maintaining that Willard failed to authenticate the evidence upon which she relied and, therefore, her affidavit was "insufficient as a matter of law." Heartland further argued that the arbitration agreement was valid and enforceable even in the absence of Battle-King's or Heartland's signatures, and the wrongful death claim must be stayed pending arbitration of the estate's other claims regardless of the non-arbitrability of their wrongful death claim.

{¶ 9} In September 2020, the trial court denied Heartland's motion to stay pending arbitration. It is from this decision that Heartland now appeals.

## II. Arbitration and R.C. 2711.02

{¶ 10} Ohio recognizes a "strong public policy" in favor of arbitration and the enforcement of arbitration provisions. *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 15; *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 24; R.C. 2711.01(A). "'Arbitration is favored because it provides the parties * * * with a relatively expeditious and economical means of resolving a dispute.'" *Id.* at ¶ 15, quoting *Schaefer v. Allstate Ins. Co.*, 63 Ohio St.3d 708, 712, 590 N.E.2d 1242 (1992); *DeVito v. Autos Direct Online, Inc.*, 2015-Ohio-3336, 37 N.E.3d 194, ¶ 12 (8th Dist.). Consequently, if a dispute even arguably falls within the arbitration provision, the trial court must stay the proceedings until arbitration has been completed. *Featherstone v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 159 Ohio App.3d 27, 2004-Ohio-5953, 822 N.E.2d 841, ¶ 5 (9th Dist.); *Tomovich v. USA Waterproofing & Found. Servs.*, 9th Dist. Lorain No. 07CA009150, 2007-Ohio-6214, ¶ 8. Despite the presumption in favor of arbitration, a party cannot be compelled to arbitrate a dispute the party has not agreed to submit to arbitration. *Council of Smaller Ents. v. McDonald & Co.*, 80 Ohio St.3d 661, 665, 687 N.E.2d 1352 (1997); *see also Marks v. Morgan Stanley Dean Witter Commercial Fin. Servs.*, 8th Dist. Cuyahoga No. 88948, 2008-Ohio-1820, ¶ 15.

**{¶ 11}** Ohio's policy of encouraging arbitration has been declared by the legislature through the Ohio Arbitration Act, R.C. Chapter 2711. *Goodwin v. Ganley, Inc.*, 8th Dist. Cuyahoga No. 89732, 2007-Ohio-6327, ¶ 8. Chapter 2711 authorizes direct enforcement of arbitration agreements through an order to compel arbitration pursuant to R.C. 2711.03, and indirect enforcement of such agreements pursuant to an order staying trial court proceedings under R.C. 2711.02. *Maestle v. Best Buy Co.*, 100 Ohio St.3d 330, 2003-Ohio-6465, 800 N.E.2d 7, ¶ 14, 17. A party may choose to move for a stay, petition for an order to proceed to arbitration, or seek both. *Id.* at ¶ 18. Here, Heartland moved to stay the proceedings pursuant to R.C. 2711.02.

**{¶ 12}** R.C. 2711.01(A) provides that an arbitration agreement in a written contract "shall be valid, irrevocable, and enforceable, except upon grounds that exist in law or equity for the revocation of any contract." Ohio law directs trial courts to grant a stay of litigation in favor of arbitration pursuant to a written arbitration agreement on application of one of the parties in accordance with R.C. 2711.02(B), which provides:

> If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration.

{¶ 13} While a motion to compel arbitration requires a hearing according to R.C. 2711.03, one is not required for a motion to stay under R.C. 2711.02. *Maestle* at ¶ 19; *Davis v. Beggs*, 10th Dist. Franklin No. 08AP-432, 2008-Ohio-6311, ¶ 8. However, the trial court maintains discretion to hold a hearing when considering whether a R.C. 2711.02 stay is warranted. *Maestle* at ¶ 19.

{¶ 14} An order "that grants or denies a stay of a trial of any action pending arbitration * * * is a final order that may be reviewed * * * on appeal." R.C. 2711.02(C); *Dumas v. N.E. Auto Credit, L.L.C.*, 8th Dist. Cuyahoga Nos. 108151 and 108388, 2019-Ohio-4789, ¶ 6. "R.C. 2711.02(C) permits a party to appeal a trial court order that grants or denies a stay of trial pending arbitration, even when the order makes no determination pursuant to Civ.R. 54(B)." *Mynes v. Brooks*, 124 Ohio St.3d 13, 2009-Ohio-5946, 918 N.E.2d 511, syllabus (trial court's judgment denying a motion to stay proceedings pending arbitration of several claims was a final appealable order even though other claims remained pending and the trial court's judgment did not make a finding of "no just reason for delay").

{¶ 15} In determining "whether a party has agreed to arbitrate, we apply ordinary principles of contract formation." *Avery v. Academy Invests., L.L.C.*, 8th Dist. Cuyahoga No. 107550, 2019-Ohio-3509, ¶ 9, citing *Seyfried v. O'Brien*, 2017-Ohio-286, 81 N.E.3d 961, ¶ 18 (8th Dist.), and *Palumbo v. Select Mgt. Holdings, Inc.*, 8th Dist. Cuyahoga No. 82900, 2003-Ohio-6045, ¶ 18 ("The question whether the parties agreed to arbitrate their dispute is * * * a matter of contract."). "An arbitration agreement may be invalidated for the same reasons for which any

contract may be invalidated, including forgery, unconscionability, and lack of consideration." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 393, (6th Cir.2003).

{¶ 16} When reviewing a challenge to an arbitration clause, the appropriate standard of review depends on "the type of questions raised challenging the applicability of the arbitration provision." *McCaskey v. Sanford-Brown College*, 8th Dist. Cuyahoga No. 97261, 2012-Ohio-1543, ¶ 7. Generally, an abuse of discretion standard applies. *Id.*, citing *Milling Away, L.L.C. v. UGP Properties, L.L.C.*, 8th Dist. Cuyahoga No. 95751, 2011-Ohio-1103. However, the issue of whether a party has agreed to submit an issue to arbitration or questions of unconscionability are reviewed under a de novo standard of review. *Id.* at ¶ 7-8, citing *Shumaker v. Saks Inc.*, 163 Ohio App.3d 173, 2005-Ohio-4391, 837 N.E.2d 393 (8th Dist.), and *Taylor Bldg. Corp.*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12. Under a de novo standard of review, we give no deference to the trial court's decision. *Brownlee v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 97707, 2012-Ohio-2212, ¶ 9.

## III. Law and Analysis

{¶ 17} Heartland first argues that the trial court erred when it denied its motion to stay pending arbitration because it considered "unauthenticated and inadmissible evidence in denying" the motion. Heartland maintains that the estate's purported expert, Vickie Willard, relied on documents that were unauthenticated that the estate gave to her and were not included with her report.

**{¶ 18}** The estate attached Willard's affidavit to its opposition brief. In her affidavit, Willard stated that she was "engaged in the profession of forensic document examination" and had "served the legal community and law enforcement agencies for the past forty-two years." She averred that she is board certified through testing by the Board of Forensic Document Examiners.

**{¶ 19}** Willard stated that the estate's counsel retained her to compare the signature of Mary Battle-King on the Voluntary Arbitration Agreement between Battle-King and Heartland dated April 4, 2019. Willard explained that she "received the following documents, stated to bear true signatures of Mary Battle-King, for use" in comparing the signatures: a general durable power of attorney dated April 2, 2018, an admission agreement from Montefiore Home dated April 4, 2018, an Ohio Health Care Power of Attorney dated April 12, 2018, Resident Rights & Facility Responsibilities from 2018, "Patient Admission Record and Agreement (Montefiore)" dated April 10, 2014, "Patient Discharge Instructions, [University] Hospitals" dated November 11, 2015, and April 10, 2014, a rental agreement dated April 23, 1999, checks dated in 1986, 1987, and 1988, "Notice of coverage ending on specific date, form UHHCS-073 B(3/12), undated, and a sympathy card that was undated." None of these documents is in the record.

**{¶ 20}** Willard said that she examined and compared the signatures and rendered her professional opinion in a report dated April 14, 2020. Willard averred that based on her examination, which she made to a reasonable degree of certainty, "the evidence will support that the signature on the disputed Voluntary Arbitration

Agreement was not written by the same person who signed the name Mary Battle/Mary Battle-King on the comparison documents."

{¶ 21} The estate also attached Willard's "Statement of Qualifications" to its opposition brief as well as a letter written by Willard to the estate's attorney dated August 14, 2020, giving her opinion regarding the disputed signature and comparison signatures. Willard wrote in the letter:

> I intra-compared the specimen signatures represented to have been written by Mary Battle-King to study the writing patterns used to form letters, proportions of letters, size relationships, spatial patterns, slope, directional tendencies, initial strokes, terminal strokes, connecting patterns, curvatures, speed and quality of execution, range of variation, and any other graphic features present. I then studied the signature on the disputed Arbitration Agreement for the same features to determine similarity or difference.
>
> On the attached Exhibit A, it can be observed that the signature on the disputed Arbitration Agreement is written with more fluency and speed than the three signatures written in 2018 and even the two earlier signature[s]. In the 2015-2018 known signatures it can be observed that the writer is having some problem with control of the writing movement. This problem is absent in the Arbitration Agreement signature. In my opinion, Mary Battle-King is not capable to producing the smooth movement shown in the disputed signature. Further, there is a difference i[n] how the letter T is written. In the known signatures the letter is clearly identifiable as the letter "r"; whereas, in the disputed signature the third letter in the name "Mary" appears closer to the letter design of "u" or "n". In the known signatures, there is a leftward swing on the lower part of the "y" in "Mary" which is absent in the disputed signature.
>
> Based on the examination conducted, clear differences in letter format and quality of writing can be observed. In my opinion, the evidence will support that the same Mary Battle-King whose signatures appear on the documents listed as items one through fourteen did not sign the name "Mary Battle" on the disputed Arbitration Agreement. This opinion is based on a reasonable degree of professional certainty.

{¶ 22} Heartland contends that there is nothing in the record that authenticates the comparison signatures that the estate gave to Willard when she conducted her examination. Heartland maintains that Willard stated in her affidavit that the estate told her that the comparison documents contained Battle-King's signature but that there is nothing establishing that those documents actually contained Battle-King's genuine signature. Heartland argues that neither the estate nor Willard included the original documents that purportedly contained Battle-King's signature with its opposition brief, Willard's affidavit, or Willard's report. Heartland further argues that because the signatures that underlie Willard's opinion were not authenticated by a person having knowledge that the comparison signatures were in fact Battle-King's signatures, the trial court erred when it denied its motion based on "barebone allegations of fraud."

{¶ 23} The estate makes several arguments in response, including that the trial court has discretion to admit evidence, and determine the credibility of witnesses, the admissibility of expert testimony under Evid.R. 702, and whether a party has authenticated evidence under Evid.R. 901. While the estate may be correct that the trial court has discretion to determine these issues, the estate's arguments do not address Heartland's argument — that the expert's opinion is based solely on documents that were given to her by the estate's counsel who simply told her that they contained Battle-King's signature.

{¶ 24} The crux of Heartland's issue is that no one who was familiar with Battle-King's signature authenticated the documents that were given to Willard.

The estate maintains that some of the documents that Willard relied on were self-authenticating.  But the actual documents themselves are not in the record, so this argument has no merit either.

{¶ 25} Finally, the estate argues that documents exchanged during discovery do not need to be independently authenticated.  The law that the estate cites to in support of this argument is not applicable in this case because the parties have not yet exchanged discovery.

{¶ 26} Unlike Civ.R. 56 motions for summary judgment, there is nothing in R.C. 2711.02 that requires a party opposing a motion to stay to produce authenticated evidence.  In *Hedeen v. Autos Direct Online, Inc.*, 2014-Ohio-4200, 19 N.E.3d 957 (8th Dist.), we held that "the trial court did not abuse its discretion in accepting the unauthenticated documents attached" to a party's motion to stay.  *Id.* at ¶ 24.  The same would be true for a party opposing a motion to stay.  We therefore disagree with Heartland that the trial court erred when it denied its motion for this reason.

{¶ 27} Nonetheless, we conclude that the trial court erred when it denied Heartland's motion to stay without at least holding an evidentiary hearing, even though R.C. 2711.02 does not require the trial court to hold a hearing.  R.C. 2711.02 states that a trial court must stay the proceedings pending arbitration "upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration."  In this case, it was impossible for the trial court to determine that the matter was or was not referable to arbitration based

upon Heartland's motion to stay and the estate's opposition brief. Both parties produced arguments and evidence that supported their positions and were in direct contradiction to each other. We therefore conclude that although the estate did not include the documents on which its expert relied, or provide any evidence that the documents and Battle-King's purported signature on the documents were what the expert believed they were, it did present sufficient evidence to at least warrant an evidentiary hearing on the matter.

{¶ 28} Heartland further argues that the trial court erred when it denied its motion to stay given that the arbitration agreement was not unconscionable as a matter of law. However, we will not address this issue because neither party raised it in the trial court. "A reviewing court will not consider issues which the appellant failed to raise in the trial court." *Cleveland v. Assn. of Fire Fighters, Local 93*, 73 Ohio App.3d 220, 225, 596 N.E.2d 1086 (8th Dist.1991).

{¶ 29} The estate argues that because Heartland did not sign the arbitration agreement, it is not a valid agreement. We disagree. The existence of a valid contract does not necessarily require the signature of all parties to the contract. In *Richard A. Berjian, D.O., Inc. v. Ohio Bell Tel. Co.*, 54 Ohio St.2d 147, 375 N.E.2d 410 (1978), the Ohio Supreme Court stated that "[s]ignature spaces in [a] form contract do not in and of themselves require that the signatures of all the parties are a condition precedent to the contract's validity and enforceability." *Berjian* at 151. However, "it is well-established that courts will give effect to the manifest intent of the parties where there is clear evidence demonstrating that the parties did not intend to be

bound by the terms of an agreement until formalized in a written document and signed by both." *Id.*

{¶ 30} In *Berjian*, Ohio Bell provided a form contract to Berjian; Ohio Bell signed it, but Berjian never did. Despite the lack of Berjian's signature, the court found that the contract was enforceable. The Supreme Court explained that although Berjian did not sign the contract, there was no evidence of any intent by the parties that the contract should be binding only after it was signed. *Id.* The Supreme Court found that the evidence established that "Ohio Bell was justified in believing that the offeree had accepted the terms and conditions of the written agreement." *Id.* at 153. *See also Allen v. Ford Motor Co.*, 8 F.Supp.2d 702, 705 (N.D.Ohio 1998), quoting American Jurisprudence 2d, Section 185 (1991) ("[I]n the absence of a statute requiring a signature or an agreement that the contract shall not be binding until it is signed, parties may become bound by the terms of a contract, even though they do not sign it, where their assent is otherwise indicated, such as by the acceptance of benefits under the contract, or the acceptance by one of the performance by the other."); *American States Ins. Co. v. Honeywell, Inc.*, 8th Dist. Cuyahoga No. 56552, 1990 Ohio App. LEXIS 753, 14 (March 1, 1990), quoting *Corbin on Contracts*, Section 524, 774 (1950) ("If either party to the contract has otherwise signed a sufficient memorandum, it is enforceable against him as the party to be charged, even though no memorandum has been signed by the other party for whose benefit it is being enforced.").

{¶ 31} In *U.S. Bank N.A. v. Wilkens*, 8th Dist. Cuyahoga No. 96617, 2012-Ohio-1038, ¶ 48, not accepted for discretionary review, *U.S. Bank N.A. v. Wilkens*, 132 Ohio St.3d 1464, 2012-Ohio-3054, 969 N.E.2d 1231, U.S. Bank sought to foreclose on the Wilkenses' property for defaulting on their note. The Wilkenses counterclaimed. U.S. Bank subsequently moved to compel arbitration on the Wilkenses' counterclaims. The Wilkenses argued in part that the arbitration rider was not enforceable against them because the lender did not sign it. We found their argument to be meritless, explaining:

> The original lender drafted the arbitration rider and presented it to the Wilkenses when they closed on their home. The arbitration rider was incorporated by reference into the agreement with the lender and made part of the agreement. U.S. Bank is seeking to enforce the arbitration rider against the Wilkenses. To hold that the arbitration rider is not enforceable because U.S. Bank did not sign it would go against ordinary contract principles. *See Garcia v. Wayne Homes*, LLC, 2d Dist. No. 2001CA53, 2002-Ohio-1884 (arbitration agreement enforceable against purchaser despite the fact that vendor did not sign it).

*Id.* at ¶ 48.

{¶ 32} Here, Heartland is seeking to enforce an arbitration agreement against the estate that it presented to Battle-King. The fact that a representative from Heartland did not sign it does not make the agreement unenforceable. We therefore disagree with the estate's argument that the arbitration agreement is not valid because Heartland did not sign it.

{¶ 33} However, we find no merit to Heartland's argument that the arbitration agreement is valid against Battle-King because courts have upheld contracts even without signatures when the evidence establishes that there has been

a mutual assent to the essential terms of an agreement. Heartland is trying to enforce an arbitration agreement against Battle-King, which it claims she signed. The estate is alleging that Heartland forged Battle-King's signature on the arbitration agreement. If proven true, then Heartland cannot claim that Battle-King was bound to arbitrate.

{¶ 34} The estate argues that because McKee did not sign the arbitration agreement as the center representative, it proves that she was not actually present when Battle-King purportedly signed the agreement. This evidence proves no such fact. Indeed, it is why we are reversing for an evidentiary hearing.

{¶ 35} After review, we sustain Heartland's sole assignment of error because we find the trial court should have held an evidentiary hearing on the parties' competing evidence.

{¶ 36} Judgment reversed and remanded for the trial court to hold an evidentiary hearing on the issue of whether Battle-King signed the arbitration agreement or whether Heartland forged her signature.

It is ordered that appellant recover from appellee the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, ADMINISTRATIVE JUDGE

KATHLEEN ANN KEOUGH, J., and
EILEEN A. GALLAGHER, J., CONCUR