[Cite as *Carter-Jones Lumber Co. v. Colabianchi Constr., Inc.*, 2025-Ohio-1601.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| THE CARTER-JONES LUMBER CO., | **CASE NO. 2024-P-0077** |
| Plaintiff-Appellee, | |
| - vs - | Civil Appeal from the Court of Common Pleas |
| COLABIANCHI CONSTRUCTION, INC., et al., | Trial Court No. 2024 CV 00504 |
| Defendants-Appellants. | |

## OPINION AND JUDGMENT ENTRY

Decided: May 5, 2025
Judgment: Affirmed

*Nicholas J. Horrigan* and *Christine M. Garritano*, Harpst Becker, LLC, 1559 Corporate Woods Parkway, Suite 250, Uniontown, OH 44685 (For Plaintiff-Appellee).

*Steven B. Beranek*, Corsaro & Associates, 28039 Clemens Road, Westlake, OH 44145 (For Defendants-Appellants).

MATT LYNCH, J.

{¶1} Defendants-appellants, Colabianchi Construction, Inc. and Colabianchi Builders, Inc. (collectively, "Colabianchi"), appeal from the judgment of the Portage County Court of Common Pleas that granted the motion to stay proceedings and compel arbitration filed by plaintiff-appellee, The Carter-Jones Lumber Co. ("Carter Lumber"), and denied as moot Colabianchi's motion for partial judgment on the pleadings. For the following reasons, we affirm the decision of the lower court.

{¶2} The dispute relates to a contract between the parties whereby Carter Lumber agreed to provide labor, lumber, and framing services for a home to be built in

Port Clinton pursuant to the drawings and specifications provided by Colabianchi Builders. Carter Lumber also agreed to extend credit for the project to Colabianchi Construction in a separate agreement.

{¶3} Carter Lumber drafted the form contract, titled "Installed Sales Customer Agreement" ("the Agreement"), and presented it to Colabianchi Builders. At Section 13.6, the Agreement states: "This agreement, which is the Subcontractor Agreement, shall not be effective unless signed by an agent of Carter Lumber located at Carter's home office at [address redacted] and approved by Carter Lumber's Credit Department." The president of Colabianchi Builders signed the Agreement on May 17, 2021. However, it is undisputed that the Agreement was never signed by an agent of Carter Lumber.

{¶4} The Agreement also contains the following arbitration clause, in relevant part, at Section 12:

> **Disputes and Settlement**. Except as stated herein, all claims or disputes arising under this Agreement must be submitted first to mediation and if not settled, then to binding arbitration. All claims or disputes against GC [Colabianchi Builders] that are solely for non-payment of money due Carter Lumber may be resolved through mediation and binding arbitration, or litigation at Carter Lumber's option. The parties agree to give each other prompt written notice of any claim. Mediation and arbitration under this paragraph shall be in accordance with the Construction Industry Rules of the American Arbitration Association, and venue for any dispute resolution shall either be in Portage County, Ohio, or in the State where the Work was performed if required by local law.

{¶5} In spring 2022, Colabianchi Builders expressed dissatisfaction with Carter Lumber's performance. Although the parties disagree as to how dispute resolution commenced, the matter was submitted to mediation and then to the American Arbitration Association.

{¶6}   The parties engaged in arbitration for fifteen months.  An evidentiary hearing was scheduled for July 15-16, 2024.  Before the hearing took place, on July 8, 2024, Colabianchi withdrew from arbitration, contending that the arbitration provision was unenforceable because an agent of Carter Lumber never signed the Agreement as required in Section 13.6.

{¶7}   The following day, July 9, 2024, Carter Lumber instituted this action in the trial court.  Carter Lumber sought a declaratory judgment that the Agreement, including the arbitration provision, is enforceable.  Alternatively, Carter Lumber alleged claims of breach of contract, unpaid balance on the account, and unjust enrichment.  Colabianchi answered and filed a counterclaim alleging breach of contract.  Colabianchi claimed that Carter Lumber "breached its duties by entrusting the work to an unprofessional, unqualified framing sub-subcontractor which failed to construct the home in accordance with the drawings and specifications and without using sound construction methods."

{¶8}   Colabianchi moved for partial judgment on the pleadings, seeking judgment in its favor on Carter Lumber's declaratory judgment claim.  Carter Lumber filed a motion to stay the proceedings and compel arbitration of Colabianchi's counterclaim.

{¶9}   On October 15, 2024, the trial court granted Carter Lumber's motion to compel arbitration, concluding that the Agreement "is in effect and enforceable, despite the lack of signature on behalf of [Carter Lumber].  Both parties engaged in conduct, over a period of years, that indicated acceptance and performance of the Agreement."  The trial court stayed all proceedings, ordered the parties to resume arbitration pursuant to the Agreement, and denied as moot Colabianchi's motion for partial judgment on the pleadings.

Case No. 2024-P-0077

{¶10}  Colabianchi appealed and asserts two assignments of error for our review.

{¶11}  The parties do not dispute the trial court's factual findings, nor does Colabianchi raise any issue with the arbitration provision.  We are called on to determine only whether the Agreement is enforceable despite Carter Lumber's failure to fulfill the signature requirement.  Accordingly, our standard of review is de novo.  *See, e.g., St. Marys v. Auglaize Cty. Bd. of Commrs.*, 2007-Ohio-5026, ¶ 38 (contract interpretation is a matter of law subject to de novo review).

{¶12}  In the first assignment of error, Colabianchi contends that the trial court erred by granting the motion to compel arbitration.  Colabianchi's argument is that because the Agreement was required to be signed by a specified agent of Carter Lumber, and this "condition precedent" was never fulfilled, the Agreement is not enforceable.  In support of its argument, Colabianchi relies on the following statement of law in *Allen v. Ford Motor Co.*, 8 F.Supp.2d 702 (N.D. Ohio 1998): "Where . . . the parties have agreed that a contract shall not be binding until signed by a particular person, party, or official, courts will give effect to that agreement, and thus will not enforce the contract without the requisite signatures."  *Id.* at 705, citing *Richard A. Berjian, D.O., Inc. v. Ohio Bell Tel. Co.*, 54 Ohio St.2d 147, 151-152 (1978).

{¶13}  Carter Lumber acknowledges the lack of an agent's signature on the Agreement but argues that Colabianchi waived fulfillment of this condition by engaging in a pattern of conduct consistent with acceptance and performance of the Agreement. Carter Lumber, also relying on *Allen,* purports that "[w]here the signature of one of the parties is a condition precedent to a binding contract, that condition may be waived by

performance under the contract, as such performance indicates that the contract has been accepted." (Citations omitted.) *Id.* at 706.

{¶14} Colabianchi replies that Carter Lumber's argument is unsupported by Ohio law and that, regardless of the pattern of conduct between the parties, the court cannot enforce the Agreement absent the required signature. We disagree.

{¶15} "[A] condition precedent is one that is to be performed before the agreement becomes effective. It calls for the happening of some event, or the performance of some act, after the terms of the contract have been agreed on, before the contract shall be binding on the parties." *Mumaw v. W. & S. Life Ins. Co.*, 97 Ohio St. 1, 11 (1917). When a condition precedent is not satisfied, the parties to a contract may not be obligated to the terms of the agreement. *See Meeker R & D Inc. v. Evenflo Co., Inc.*, 2016-Ohio-2688, ¶ 106 (11th Dist.); *see also WSB Rehab. Servs., Inc. v. Cent. Accounting Sys., Inc.*, 2022-Ohio-2160, ¶ 26 (1st Dist.) (an unsatisfied condition precedent may "excuse performance under a contract and is a defense to a breach-of-contract claim").

{¶16} However, "a party may waive a condition precedent by performing under the contract despite the nonfulfillment of the condition." *WSB Rehab. Servs.* at ¶ 27, citing *Corey v. Big Run Indus. Park, LLC*, 2009-Ohio-5129, ¶ 19 (10th Dist.); *see also McCruter v. Travelers Home & Marine Ins. Co.*, 2021-Ohio-472, ¶ 85 (11th Dist.) ("It is a basic principle of contract law that a party to a contract who would benefit from a condition precedent to its performance may waive that condition."). "A waiver is an intentional relinquishment of a known right which may be made by express words or by conduct." *Father & Son Property Maintenance, LLC v. Maxim Ents., Inc.*, 2011-Ohio-689, ¶ 21 (5th Dist.), citing *White Co. v. Canton Transp. Co.*, 131 Ohio St. 190 (1936). "'In Ohio, the

Case No. 2024-P-0077

general rule is that performance of a condition precedent may be waived by the party to whom the benefit of the condition runs; the waiver may arise expressly or by implication, and the key to its application in a particular case is a showing of some performance pursuant to the terms of the contract.'" *Id.* at ¶ 22, quoting *Mangan v. Prima Constr., Inc.*, 1987 WL 9466, *2 (1st Dist. Apr. 8, 1987), citing *Ohio Farmer's Ins. Co. v. Cochran*, 104 Ohio St. 427 (1922); *accord WSB Rehab. Servs.* at ¶ 27.

{¶17} "On this point, courts have held that equitable estoppel 'precludes a party from enjoying rights and benefits under a contract while at the same time avoiding its burdens and obligation.'" *O'Brien & Assocs. Co., L.P.A. v. E. Worthington, L.L.C.*, 2023-Ohio-3494, ¶ 27 (10th Dist.), quoting *InterGen N.V. v. Grina*, 344 F.3d 134, 145 (1st Cir. 2003); *see also Sweeney v. Grange Mut. Cas. Co.*, 146 Ohio App.3d 380, 385 (8th Dist. 2001) (where the party asserting the existence of a condition precedent waives that condition, its nonperformance is not a bar to recovery on the contract). The party alleging waiver carries the burden to "prove a clear, unequivocal, decisive act of the party against whom the waiver is asserted, showing such a purpose or acts amounting to an estoppel on his part." *White* at paragraph four of the syllabus; *accord Father & Son* at ¶ 21; *see also Cabrera v. Charter Comms., LLC*, 2022-Ohio-2947, ¶ 19 (5th Dist.), quoting *Miller v. Cardinal Care Mgt., Inc.*, 2019-Ohio-2826, ¶ 34 (8th Dist.) ("'the party moving for arbitration has the burden of establishing the existence of an enforceable arbitration agreement between it and the party against whom the moving party seeks enforcement'").

{¶18} Here, there is no dispute that both parties performed under the terms of the Agreement for many months before the need arose for dispute resolution. Colabianchi purchased, and Carter Lumber provided, labor and materials for the construction project.

Moreover, Colabianchi engaged in arbitration for fifteen months before asserting, mere days before the evidentiary hearing, that the Agreement was unenforceable. Until that moment, Colabianchi's actions were inconsistent with any intent to enforce the signature requirement. In essence, Colabianchi's counterclaim seeks to hold Carter Lumber liable for breach of contract based on obligations arising out of the Agreement, while at the same time attempting to avoid any obligation under the Agreement to arbitrate. For these reasons, we conclude that Carter Lumber met its burden to show that Colabianchi waived the signature requirement and is now estopped from asserting that the Agreement is not enforceable due to Carter Lumber's failure to fulfill that requirement. Accordingly, the trial court did not err in granting the motion to stay proceedings and compel arbitration.

{¶19} Colabianchi cites two additional cases in support of its argument, both of which are inapposite. In *Mansfield Square, Ltd. v. Big Lots, Inc.*, 2008-Ohio-6422 (10th Dist.), the courts held that the plaintiff could not reasonably rely on the defendant's oral assurances because the defendant had clearly manifested its intent not to be bound until the parties executed a written agreement. *Id.* at ¶ 1, 24. And in *Rousseau v. Setjo, L.L.C.*, 2020-Ohio-5002 (8th Dist.), there was no evidence that the defendant intended to be bound by an arbitration agreement that did not contain his signature. *See id.* at ¶ 12, 18. Here, the parties' agreement was reduced to a final writing, which a representative of Colabianchi signed, and both parties' performance indicated their intent to be bound by the terms of the Agreement.

{¶20} The first assignment of error is without merit.

{¶21} In the second assignment of error, Colabianchi contends that the trial court erred by denying as moot the motion for partial judgment on the pleadings. Colabianchi

sought judgment in its favor on Carter Lumber's claim for a declaratory judgment that the Agreement is enforceable. Colabianchi provides no argument in support of this assignment of error. Nevertheless, given our conclusion that the trial court did not err by granting the motion to compel arbitration on the basis that the Agreement is enforceable, this assignment of error is not well taken.

{¶22} The judgment of the Portage County Court of Common Pleas is affirmed.

JOHN J. EKLUND, J.,

SCOTT LYNCH, J.,

concur.

Case No. 2024-P-0077

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellants' assignments of error are without merit. It is the judgment and order of this court that the judgment of the Portage County Court of Common Pleas is affirmed.

Costs to be taxed against appellants.

 

JUDGE MATT LYNCH

 

JUDGE JOHN J. EKLUND,
concurs

 

JUDGE SCOTT LYNCH,
concurs

---

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2024-P-0077